TIMOTHY GLENN WARZYNSKI AND WIFE, NANNETTE HARPER WARZYNSKI, PLAINTIFFS v. EMPIRE COMFORT SYSTEMS, INC., SAFEL-INELSA OR- BAICETA, S.A. AND JENKINS GAS COMPANY OF POLLOCKSVILLE, NORTH CAROLINA, DEFENDANTS

No. 904SC260

(Filed 19 March 1991)

1. **Sales § 22.3 (NCI3d)— products liability—heater—sealed container defense**

    The trial court erred by granting summary judgment for defendant Empire based on the sealed container defense in a products liability action where plaintiffs' home was destroyed by a fire caused by an allegedly faulty gas heater; the heater was manufactured by Safel, a Spanish company; Safel had sales, licensing, patent, trademark and technical assistance agreements and licenses with Empire, an Illinois corporation; Empire had the exclusive right to sell the heaters in the United States; Empire acquired the heaters from Safel in sealed containers; Tharrington Industries was a North Carolina distributor for Empire; and Tharrington Industries sold the Empire Corcho gas heaters to Jenkins Gas Company, which sold two of the heaters to plaintiffs and installed them in plaintiffs' home. Although language in Empire's advertisement was mere puffing and not an express warranty, there was a genuine issue of material fact as to whether Empire was the apparent manufacturer of the heater. N.C.G.S. § 99B-2(a).

    **Am Jur 2d, Products Liability §§ 504, 684.**

    **Products liability; defective heating equipment. 1 ALR4th 748.**

2. **Rules of Civil Procedure § 4 (NCI3d); Process § 14 (NCI3d)— products liability action—jurisdiction over Spanish company— mailing by clerk of court—stream of commerce**

    The trial court correctly held in a products liability action that a Spanish heater manufacturer was subject to the jurisdiction of North Carolina courts where the court had before it an affidavit of addressing and mailing from the clerk of court and an affidavit from a representative of Federal Express that complied with the requirements of N.C.G.S. § 1-75.10(4). Proper service is presumed when the provisions of N.C.G.S.

§ 1A-1, Rule 4, are met, and Rule 4(j3) provides proof of service may be made as prescribed in N.C.G.S. § 1-75.10. Moreover, Safel subjected itself to the jurisdiction of the courts of North Carolina by injecting its product into the stream of commerce without any indication that it wanted to exclude North Carolina.

**Am Jur 2d, Products Liability § 903.**

3. **Process § 14 (NCI3d) — products liability — Spanish defendant — jurisdiction**

The trial court did not err in a products liability action by denying defendant Safel's motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(2) where Safel purposefully injected its heaters into the stream of commerce without any indication that it wanted to exclude North Carolina and, although Judge Reid in ruling on Safel's motion to dismiss erroneously concluded that an earlier ruling by a different judge on defendant Empire's motion for summary judgment also ruled on whether defendant Safel was subject to North Carolina jurisdiction, Judge Reid made extensive findings of fact regarding service of process and the relationship between Empire and Safel; concluded that process and service were proper and that the exercise of in personam jurisdiction was justified in light of Safel's program to promote and distribute its heaters throughout the U.S.; and a review of the record indicates that the findings were supported by competent evidence and that the findings supported the conclusions.

**Am Jur 2d, Products Liability § 903.**

4. **Accord and Satisfaction § 5 (NCI4th) — products liability action — agreement not to sue — not supported by consideration**

The trial court did not err by granting summary judgment for plaintiffs on defendant Jenkins' defenses of accord and satisfaction and release in a products liability action involving a gas heater where, although the evidence conflicted as to the substance of the agreement between Jenkins and plaintiffs' attorney, any promise not to sue Jenkins was unenforceable because it was not supported by adequate consideration.

**Am Jur 2d, Accord and Satisfaction §§ 12, 13.**

APPEAL by plaintiffs and defendant Safel-Inelsa, S.A., from order signed 15 August 1989 by *Judge James D. Llewellyn* in

JONES County Superior Court. Appeal by defendant Safel-Inelsa, S.A., from order signed 22 December 1989 by *Judge David E. Reid, Jr.* in JONES County Superior Court. Appeal by defendant Jenkins Gas Company of Pollocksville, North Carolina, from order signed 22 December 1989 by *Judge David E. Reid, Jr.* in JONES County Superior Court. Heard in the Court of Appeals 25 September 1990.

Plaintiffs, the Warzynskis, brought this products liability action after a fire destroyed their home and their personal belongings. The Warzynskis contend that a faulty Empire Corcho gas heater caused the fire.

Defendant Safel-Inelsa Orbaiceta, S.A. (Safel), manufactured the gas heaters that are the subject of this suit. Safel is a Spanish company with its principal office in Pamplona, Spain. In 1984 Safel entered into two contracts with Empire Comfort Systems, which is an Illinois corporation: (1) a sales and licensing agreement and (2) a patent, trademark and technical assistance agreement and license. In 1986 the two companies also entered a repair and modification subcontracting agreement. Under the sales and licensing agreement, Empire had the exclusive right to sell the Empire Corcho gas heaters in the United States. Empire and Safel agreed to share the cost of advertising the heaters in the United States. Safel and Empire shared expenses for advertising but did not share profits.

Tharrington Industries is a North Carolina distributor for Empire. Tharrington Industries sold the Empire Corcho gas heaters to Jenkins Gas Company of Pollocksville.

Defendant Jenkins Gas Company of Pollocksville sold two Empire Corcho Model R-15 gas heaters to the Warzynskis in October 1985. Jenkins' employees installed the heaters in the Warzynskis' home.

On 2 January 1986, a fire allegedly caused by one of the Empire gas heaters destroyed the Warzynski residence. The Warzynskis brought suit against Empire, Safel and Jenkins alleging negligence and breach of express and implied warranties. Defendant Safel filed a motion to dismiss under Rule 12(b). Defendants Jenkins and Empire filed answers denying liability.

Three final orders are the subject of this appeal. First, plaintiffs Warzynski and defendant Safel each appeal the entry of summary judgment in favor of defendant Empire Comfort Systems.

**WARZYNSKI v. EMPIRE COMFORT SYSTEMS**

[102 N.C. App. 222 (1991)]

Summary judgment for defendant Empire was based on the sealed container defense of G.S. 99B-2(a). Second, Safel appeals the denial of its Rule 12(b) motion to dismiss. Third, defendant Jenkins appeals the entry of summary judgment for the plaintiffs on their sixth affirmative defense — accord and satisfaction and release.

*Blanchard, Tucker, Twiggs & Abrams, P.A., by Charles F. Blanchard and Jerome P. Trehy, Jr., for the plaintiff-appellant/appellee.*

*White & Allen, P.A., by John R. Hooten and John C. Archie, for the defendant-appellant/appellee Jenkins Gas Company of Pollocksville, North Carolina.*

*Maupin Taylor Ellis & Adams, P.A., by Mark S. Thomas and M. Keith Kapp, for the defendant-appellant Safel-Inelsa, S.A.*

*Harris and Associates, by Thomas E. Harris and C. David Creech, for the defendant-appellee Empire Comfort Systems, Inc.*

EAGLES, Judge.

[1] We first address the plaintiffs' and defendant Safel's appeal of the entry of summary judgment in favor of Empire Comfort Systems. Here, summary judgment was based on the sealed container defense of G.S. 99B-2(a). We hold that the trial court erred in granting summary judgment for Empire because a genuine issue of material fact existed as to whether Empire was the apparent manufacturer of the heaters. By so holding, we adopt § 400 of the Restatement (Second) of Torts and conclude that a seller who holds himself out to the public as the manufacturer of a product is not protected from products liability actions by G.S. 99B-2(a).

G.S. 99B-2(a) provides:

No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession; provided, that the provisions

of this section shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent.

Here, the parties direct their arguments to the exceptions to the sealed container defense of G.S. 99B. We conclude that none of the parties dispute that Empire acquired the heaters from Safel in sealed containers. The plaintiffs first contend that the trial court erred in granting summary judgment because Empire made express warranties regarding the heaters. As noted above, G.S. 99B-2(a) excludes actions for express warranties. We find plaintiff's argument that Empire made express warranties without merit. Empire advertised that it sold "America's most complete line of reliable, economical gas heating appliances." Under the Uniform Commercial Code "a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." G.S. 25-2-313(2). Under the facts presented, we cannot say that Empire's statement that the heater was "reliable" was so regarded by the Warzynskis as to be part of the reason for their purchase. See 3 A. Squillante & J. Fonseca, Williston on Sales § 17-5 (4th ed. 1974). Accordingly, we hold that the language in Empire's advertisement is merely puffing and not an express warranty.

Plaintiffs also argue that Empire is not entitled to assert the sealed container defense under G.S. 99B because Empire was more than a "mere conduit" in the distribution chain. We agree.

Plaintiffs rely on the Restatement (Second) of Torts which provides as follows: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (1965). Comment d provides:

> [W]here it is clear that the actor's only connection with the chattel is that of a distributor of it (for example, as a wholesale or retail seller), he does not put it out as his own product and the rule stated in this section is inapplicable. Thus, one puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark. . . . The mere fact that the goods are marked with such additional words as "made for" the seller, or describe him as a distributor, particularly in the absence of a clear and distinctive designation of the real manufacturer or packer, is not sufficient to make inapplicable the rule stated in this Section.

... However, where the real manufacturer or packer is clearly and accurately identified on the label or other markings on the goods, and it is also clearly stated that another who is also named has nothing to do with the goods except to distribute or sell them, the latter does not put out such goods as his own. That the goods are not the product of him who puts them out may also be indicated clearly in other ways.

Restatement (Second) of Torts § 400 comment d (1965).

Our research disclosed only one case in which the appellate courts of this state have considered section 400 of the Restatement. The Supreme Court cited this section of the Restatement with approval in dicta in *Rulane Gas Co. v. Montgomery Ward & Co.*, 231 N.C. 270, 56 S.E.2d 689 (1949).

Empire argues that section 400 is a form of strict liability and that it is contrary to the express language of G.S. 99B-2. We disagree. Section 400 is not a form of strict liability because it does not impose on sellers the absolute duty to make products safe. It merely provides that a seller is subject to the same liability as a manufacturer if the seller leads the public to believe that he is the manufacturer. Empire also contends that in *Neihage v. Kittrell Auto Parts, Inc.*, 41 N.C. App. 538, 255 S.E.2d 315 (1979), *disc. rev. denied*, 298 N.C. 298, 259 S.E.2d 914 (1979), this Court rejected the argument that a company can be made liable for negligent manufacturing merely by putting its name on a product. In *Neihage* the Court held only that summary judgment was proper where plaintiff did not offer any evidence that the defendant represented or held itself out to the public as having designed or manufactured a steel punch.

We believe that § 400 and G.S. 99B-2 can be read together and do not conflict. In fact G.S. 99B-2 is consistent with § 402 of the Restatement (Second) of Torts. Section 402 provides:

A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.

Restatement (Second) of Torts § 402 (1965).

Here, Empire and Safel shared the expenses of advertising the heaters and Empire serviced the heaters. The heaters also came with an "Empire Heating Appliance Limited Warranty." The record indicates that all of the advertising promoting the heaters referred to Empire and not to Safel. Nowhere in its advertising did Empire say that it was not the manufacturer nor did it say that the heater was manufactured in another country. One of Empire's promotional flyers for dealers and wholesalers called the Empire Corcho "America's best made and best-selling unvented gas wall furnace." Nothing on any of the packaging indicated that Safel was the manufacturer. The only evidence to indicate that Empire might not have manufactured the heater was a decal on the carton and the heater that said the heater was made in Spain. The decal did not refer to Safel at all. Therefore, we hold that a genuine issue of material fact exists as to whether Empire was the apparent manufacturer of the heaters. Accordingly, we reverse the trial court's entry of summary judgment for Empire.

[2]   Additionally, we hold that the trial court correctly found that Safel was subject to the jurisdiction of the courts of this state. Rule 4(j3) establishes procedures for service of process in a foreign country. The rule allows for service by any form of mail requiring a signed receipt and addressed and dispatched by the clerk of court to the party to be served. Rule 4(j3) also provides that proof of service may be made as prescribed in G.S. 1-75.10 and shall include an affidavit of "addressing and mailing" by the clerk of court. The trial court had before it an affidavit of "addressing and mailing" from the clerk of court and an affidavit from a representative of Federal Express that complied with the requirements of G.S. 1-75.10(4). Proper service is presumed when the provisions of Rule 4 are met. G.S. 1A-1 Rule 4(j2)(2). At the time the trial court considered Empire's motion for summary judgment, Safel had offered no evidence to rebut that presumption.

We also find no merit in Safel's argument that there was no basis for the court's exercise of personal jurisdiction. Under *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 51, 306 S.E.2d 562, 568 (1983), a corporation is subject to the jurisdiction of the courts of this state when it has "purposefully injected [its] product into the stream of commerce without any indication that it desired to limit the area of distribution of its product so as to exclude North Carolina." Here, Safel gave Empire an exclusive right to sell the heaters in the United States with no limit as to North

## WARZYNSKI v. EMPIRE COMFORT SYSTEMS

[102 N.C. App. 222 (1991)]

Carolina. Under *Bush v. BASF*, Safel injected its product into the stream of commerce and subjected itself to the jurisdiction of the courts of this state.

Safel argues that the recent United States Supreme Court decision in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), has rendered *Bush v. BASF* "overbroad" and "untenable." We disagree. A majority of the Court did not join in the section of the *Asahi* opinion that attempts to question the stream of commerce doctrine. Thus, *Asahi* does not overrule previous cases that follow the stream of commerce theory, including *Bush v. BASF*.

[3] Next, we turn to the denial of defendant Safel's motion to dismiss for lack of jurisdiction. We hold that the trial court did not err.

We note that Safel assigned error to the trial court's denial of its motion to dismiss under Rule 12(b)(4) and 12(b)(5) but chose not to pursue its appeal on these issues. Accordingly, we will address only the denial of Safel's motion under Rule 12(b)(2).

Safel first contends that the trial court erred because the evidence of record here does not support the exercise of personal jurisdiction and the exercise of personal jurisdiction would therefore violate due process. We disagree. As discussed above, *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 306 S.E.2d 562 (1983), controls. Here by entering the sales agreement with Empire, Safel purposefully injected its heaters into the stream of commerce without any indication that it desired to limit the area of distribution so as to exclude North Carolina.

Next, Safel argues that the trial court erred by denying Safel's motion to dismiss because the trial court's grant of summary judgment for defendant Empire did not decide Safel's motion to dismiss for lack of jurisdiction. Judge Llewellyn granted summary judgment for Empire on 15 August 1989 and did not address Safel and its pending Rule 12(b) motion. In his order denying Safel's motion to dismiss, Judge Reid concluded that "[n]ecessarily, and by implication, Judge Llewellyn has ruled in this action on whether or not the Defendant Safel is subject to the jurisdiction of the Superior Court of Jones County, North Carolina; the sufficiency of the process and service of process and the propriety of the exercise of in personam jurisdiction over the Defendant Safel are

presently the law of the case, and may not be overturned by this Court." We agree that the trial court's grant of summary judgment for defendant Empire did not also decide Safel's motion to dismiss. However, we do not agree with Safel that it was denied a genuine opportunity to challenge jurisdiction and service of process. In his order Judge Reid made extensive findings of fact regarding process and service of process and the relationship between Empire and Safel. Judge Reid also concluded that process and service were proper and that the exercise of in personam jurisdiction was justified in light of Safel's program to promote and distribute its heaters throughout the United States. A review of the record discloses that the trial court's findings of fact are supported by competent evidence and that the findings of fact support the trial court's conclusions of law. Therefore, they are binding on this Court. *Bangle v. Webb*, 220 N.C. 423, 17 S.E.2d 613 (1941). Accordingly, we hold that the trial court's denial of Safel's motion to dismiss was proper.

[4]  Finally, we address Jenkins' appeal of summary judgment on its defense of accord and satisfaction and release. We hold that the trial court did not err in granting summary judgment for the plaintiffs on these issues.

Jenkins' insurance carrier employed Dr. Manning, an expert and employee of Accident Reconstruction Analysis, Inc. to investigate the fire.

Jenkins contends that the trial court erred in granting summary judgment for plaintiffs because the evidence conflicted as to whether Dr. Manning agreed to release his report to Mr. Warzynski and as to whether Dr. Manning later entered into a release with plaintiffs' counsel. Jenkins argues that Dr. Manning's deposition directly conflicted with Mr. Warzynski's affidavit. We disagree. Dr. Manning's deposition does not address the alleged agreement he made with Mr. Warzynski; it only addresses Dr. Manning's discussions with plaintiffs' attorneys. Plaintiffs presented the uncontradicted affidavits of Mr. Warzynski and J.P. Walston, Jenkins' own manager, that Mr. Warzynski agreed to bring the heaters to Raleigh on Dr. Manning's representation that he would give Mr. Warzynski a copy of his report and photographs taken at the scene of the fire. Summary judgment is properly entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Meadows v. Cigar Supply Co.*, 91 N.C. App. 404, 371 S.E.2d 765 (1988). Here,

WARZYNSKI v. EMPIRE COMFORT SYSTEMS

[102 N.C. App. 222 (1991)]

no genuine issue of fact existed since defendant presented no evidence to dispute the alleged agreement between Mr. Warzynski and Dr. Manning.

We agree with Jenkins' contention that the evidence conflicted as to the substance of the agreement between Jenkins and plaintiffs' attorney. Defendants argue that plaintiffs agreed not to make Jenkins a party to the suit in exchange for a copy of the report. Plaintiffs contend that the agreement was not to use the report or call Dr. Manning as a witness. However, we note that the undisputed facts are that Dr. Manning had previously promised to provide Mr. Warzynski with a copy of the report. Therefore, defendants had a preexisting duty to provide plaintiffs with a copy of the report. Even if plaintiffs' counsel and Jenkins agreed that plaintiff would not sue Jenkins, the promise was unenforceable because it was not supported by adequate consideration. "It is generally established that a promise to perform an act which the promisor is already bound to perform is insufficient consideration for a promise by the adverse party." *Burton v. Kenyon*, 46 N.C. App. 309, 311, 264 S.E.2d 808, 809 (1980). Summary judgment is designed to eliminate trial when a fatal weakness in a claim or defense is exposed. *Asheville Contracting Co. v. City of Wilson*, 62 N.C. App. 329, 332, 303 S.E.2d 365, 368 (1983). We hold that the trial court properly entered summary judgment in favor of the plaintiffs on Jenkins' affirmative defense of accord and satisfaction and release because the defense is unfounded as a matter of law.

For the reasons stated the order of the trial court granting summary judgment for defendant Empire is reversed, the order of the trial court denying defendant Safel's motion to dismiss is affirmed and the order allowing summary judgment on defendant Jenkins' defense of accord and satisfaction and release is affirmed.

Affirmed in part; reversed in part.

Judges JOHNSON and PARKER concur.