NISSAN DIVISION OF NISSAN MOTOR CORPORATION IN U.S.A. v. FRED ANDERSON NISSAN, PAUL S. MEEKER AND MEEKER LINCOLN-MERCURY, INC.

No. 9210SC802

(Filed 7 September 1993)

1. **Automobiles and Other Vehicles § 187 (NCI4th)— relocation of dealership—application of statutory amendment—not retroactive**

The trial court's application of the amended version of N.C.G.S. § 20-305(4) in an action involving the relocation of

**NISSAN MOTOR CORP. v. FRED ANDERSON NISSAN**

[111 N.C. App. 748 (1993)]

an automobile dealership was not retroactive where defendant did not present its written proposal until after 1 October 1991, the effective date of the amendments, although plaintiff was aware that defendant had been negotiating the relocation. The right to object did not vest when plaintiff became aware of defendant's negotiations because plaintiff unequivocally stated that it would not approve the proposal only in response to the formal proposal of 3 October 1991; moreover, the Dealer Agreement set no limits on how often a dealer might apply for permission to relocate or how many times the dealer might submit the same proposal.

**Am Jur 2d, Automobiles and Highway Traffic §§ 150, 394.**

**Validity, construction, and application of state statutes regulating dealings between automobile manufacturers, dealers, and franchises. 82 ALR4th 624.**

2. **Automobiles and Other Vehicles § 187 (NCI4th)— relocation of automobile dealership—statutory regulation—not unconstitutional**

The amendments to N.C.G.S. § 20-305(4), providing for administrative review of an automobile manufacturer's or distributor's refusal to approve a dealer's relocation of its facilities, are not an unconstitutional impairment of the parties' right to contract. The statute about which plaintiff complains does in fact prevent plaintiff from blocking a relocation of a dealership without showing that such a relocation would be unreasonable under the circumstances; nonetheless, this amendment is a patently reasonable exercise of the State's police power.

**Am Jur 2d, Automobiles and Highway Traffic §§ 150, 394.**

**Validity, construction, and application of state statutes regulating dealings between automobile manufacturers, dealers, and franchises. 82 ALR4th 624.**

3. **Notice § 4 (NCI4th)— method of giving notice—statutory requirement of registered mail—Federal Express sufficient**

Delivery by Federal Express, with return receipt, is registered mail within the meaning of N.C.G.S. § 20-305 and plaintiff gave proper notice of its objection to defendant's proposed relocation of an automobile dealership within the statutory

period. The purpose behind the requirement that the notice be sent by registered mail is to avoid disputes about whether or when a party receives notice; delivery by Federal Express with signed receipts meets that purpose.

**Am Jur 2d, Notice §§ 5 et seq., 34, 41 et seq.**

Judge WELLS concurring.

Appeal by plaintiff from order entered 6 April 1992 by Judge Donald H. Stephens in Wake County Superior Court. Heard in the Court of Appeals 15 June 1993.

This action arises out of a dispute between plaintiff, an automobile manufacturer, and defendant Fred Anderson Nissan (defendant), a dealership for motor vehicles and parts manufactured by plaintiff, and involves defendant's decision to move its dealership to a location owned by appellee Meeker Lincoln Mercury, Inc. (Meeker). Under the standard Nissan Dealer Sales and Service Agreement (the Dealer Agreement), defendant was unable to relocate its dealership facilities without plaintiff's prior written consent.

On 24 May 1991, plaintiff wrote defendant stating that it had become aware that defendant was considering relocating its facilities, indicating its opposition to defendant's plan for relocation, but stating that defendant would have to submit a written proposal if it chose to proceed with the plan. On 29 May 1991, defendant informed plaintiff that it was seriously considering acquiring the Meeker Lincoln-Mercury franchises and relocating to the Meeker site and that it would advise plaintiff of the details of the plan. Again on 17 June 1991, defendant wrote to plaintiff concerning the relocation plan and stated, "[s]hould we put this package together we will contact you with the details" and on 19 July 1991, defendant wrote to plaintiff saying "[w]hen we firm up on our plans we will contact you . . . ."

On 3 October 1991, defendant hand-delivered to plaintiff notice of its intent to relocate. Plaintiff advised defendant of its opposition to the relocation by a letter dated 31 October 1991, which was delivered by Federal Express on 1 November 1991. On 27 November 1991, defendant filed its petition for a hearing with the Division of Motor Vehicles (DMV) and moved for summary judgment on its petition, alleging that plaintiff's notice of objection was invalid because it was not delivered by the United States Postal Service,

thereby waiving plaintiff's objection to the relocation. In an order entered 31 January 1992, Robert A. Pruett, the designated Hearing Officer for the DMV, found that plaintiff had waived its objection to the relocation by failing to give proper notice within the statutory period and granted defendant's motion for summary judgment.

On 3 February 1992, plaintiff filed a petition for review of DMV's order in Wake County Superior Court. On 13 April 1992, the court entered its order affirming the decision of the hearing officer. From this order plaintiff appeals.

*Smith, Helms, Mulliss & Moore, by David M. Moore, James L. Gale, Mark R. Smith, for petitioner-appellant.*

*Johnson, Gamble, Mercer, Hearn & Vinegar, by Richard J. Vinegar, for respondent-appellee Fred Anderson Nissan.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Michael D. Meeker, for appellee-intervenors Paul S. Meeker and Meeker Lincoln-Mercury, Inc.*

McCRODDEN, Judge.

On 1 October 1991, certain amendments to the Motor Vehicle Dealers and Manufacturers Licensing Law (the Licensing Law), N.C. Gen. Stat. §§ 20-285 to -308.2 (1989 and Supp. 1992), became effective. The General Assembly amended Section 20-305 to provide for administrative review of an automobile manufacturer or distributor's refusal to approve a dealer's relocation of its facilities. Under the amended statute, after receiving written notice of a proposed relocation, a manufacturer must send the dealer written notice of its opposition to the relocation by registered or certified mail, return receipt requested, within 30 days, or any such opposition shall be considered waived. If the manufacturer gives notice of objection, the dealer may then file a petition for a hearing with DMV. At the DMV hearing, the manufacturer bears the burden of showing that the proposed relocation would be "unreasonable under the circumstances." N.C.G.S. § 20-305(4).

Both DMV and the trial court applied the amended statute to this case, and that application forms the basis of plaintiff's appeal. We address the following issues: (I) whether the trial court retroactively applied the amended version of Section 20-305, thereby depriving plaintiff of its right to block the relocation of a dealership; (II) whether the trial court erred in applying the statutes because,

according to plaintiff's argument, it unconstitutionally impaired plaintiff's contractual rights to control the location of its dealerships; and (III) whether the trial court erred in affirming the hearing officer's determination that plaintiff had failed to give proper notice of its objection to defendant's relocation.

I.

[1]   Plaintiff first argues that the trial court's application of the amended version of Section 20-305 was unconstitutionally retroactive because it deprived plaintiff of its right to block the relocation of a dealership. We disagree.

In the recent case of *Fogleman v. D&J Equipment Rental,* 111 N.C. App. 228, 431 S.E.2d 849 (1993), this Court dealt with the issue of when the application of an amended statute acts to deprive a party of vested rights. In discussing the applicable law, we reiterated:

> Ordinarily, statutes are presumed to act prospectively only, unless it is clear that the legislature intended that the law be applied retroactively. The application of a statute is deemed retroactive when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment.

*Id.* at ---, 431 S.E.2d at 851 (quoting *Gardner v. Gardner,* 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980)) (citation omitted). Under this standard, we believe that the trial court in this case did not apply the statute retroactively. Defendant did not initiate the transaction to which the statute was applied, *i.e.,* it did not give plaintiff notice of its proposed relocation, until after the statute became effective. Although plaintiff was aware that defendant had been negotiating with Meeker, defendant did not present its written proposal until after 1 October 1991, the effective date of the amendments. Plaintiff's right to object to this proposed relocation, therefore, did not vest before the statute became effective.

Plaintiff contends, however, that the right to object vested when it became aware of defendant's negotiations with Meeker. The evidence does not bear this out. Plaintiff itself informed defendant several times that any proposal for relocation was to be made in writing, clearly implying that it did not consider any of their correspondence to be an actual proposal. Only in response to the

formal proposal of 3 October 1991, did plaintiff unequivocally state that it would not approve the proposal.

Moreover, the Dealer Agreement set no limits on how often a dealer might apply for permission to relocate or how many times the dealer might submit the same proposal. Hence, defendant could have requested the same relocation many times before 1 October 1991, and plaintiff could have vetoed each of those requests. Defendant would still have been free to give notice to plaintiff after 1 October 1991, and to have that proposal governed by the amended statute. We find that defendant did not make the proposal to relocate until after 1 October 1991, and that, therefore, the trial court's application of the amended version of Section 20-305(4) was not retroactive. We overrule plaintiff's first assignment of error.

## II.

[2] Plaintiff's second argument is that the statute, as amended, is unconstitutional in that it impairs plaintiff's contractual rights, specifically, the exclusive right to control the location of its dealerships. We disagree.

In *Mazda Motors v. Southwestern Motors*, 36 N.C. App. 1, 243 S.E.2d 793 (1978), *rev'd in part on other grounds*, 296 N.C. 357, 250 S.E.2d 250 (1979), this Court considered the constitutionality of N.C.G.S. § 20-305(6), which required franchisors to give dealers written notice of termination of their franchise contracts. Although *Mazda* focused on a different subsection of N.C.G.S. § 20-305, its rationale is controlling.

The Court in *Mazda* expounded the standard for judging whether a statute acts to impair contracts unconstitutionally. Although the Constitution of the United States forbids states from impairing the obligations of contracts, "the 'contracts clause' grants a qualified and not an absolute right. Clearly, the right to make contracts is subject to the power of the General Assembly to impose restrictions for the benefit of the general public in areas of public interest and to prevent business practices deemed harmful." *Id.* at 6-7, 243 S.E.2d at 798. In its statement of purpose to the Licensing Law, the General Assembly declared that the distribution of motor vehicles affects the public interest and welfare of the State of North Carolina, and that, in the exercise of its police power, the State may regulate persons involved in manufacturing and distributing vehicles. N.C.G.S. § 20-285. We presume "that the judgment of

NISSAN MOTOR CORP. v. FRED ANDERSON NISSAN

[111 N.C. App. 748 (1993)]

the General Assembly is correct and constitutional, and a statute will not be declared unconstitutional unless this conclusion is so clear that no reasonable doubt can arise." *Mazda*, 36 N.C. App. at 7, 243 S.E.2d at 798.

In deciding this issue, we must determine whether the law disturbs the "essential or core expectations arising from the particular type of contract . . . [and] such expectations are not disturbed unless the demoralizing effects of state legislation are so great as totally to discourage the parties and others from entering such contracts . . . ." *Id.* at 9-10, 243 S.E.2d at 800. After noting that any alteration of a contract involves an interference to some degree, the *Mazda* Court found that the challenged provision was a reasonable exercise of the State's police power and was not an unconstitutional impairment of automobile franchisors' contracts.

In this case, the statute about which plaintiff complains does in fact prevent plaintiff from blocking a relocation of a dealership without showing that such a relocation would be unreasonable under the circumstances. Nonetheless, we believe that this amendment, which provides a procedure by which an automobile dealer may seek administrative review of its franchisor's refusal to approve a relocation, is a patently reasonable exercise of the State's police power. Such a requirement surely will not "totally discourage" the parties in this case, or others, from entering into similar franchise contracts. Following *Mazda*, we cannot say that this amendment disturbs the core expectations of the contract between plaintiff and defendant. Accordingly, we hold that the amendments to Section 20-305(4) are not an unconstitutional impairment of the parties' right to contract, and we overrule plaintiff's second argument.

### III.

[3] Plaintiff's final argument is that the trial court erred in affirming the hearing officer's order because, it contends, contrary to the court's order, the notice of objection, which Federal Express rather than the United States Postal Service delivered, complied with the notice requirement of N.C.G.S. § 20-305(4). That statute does not specifically require service by the U.S. Postal Service; in relevant part, it reads:

> The franchisor shall send the dealership notice of objection, by registered or certified mail, return receipt requested, to the proposed transfer, sale, assignment, relocation, or change

within 30 days after receipt of notice from the dealer, as provided in this section. Failure by the franchisor to send notice of objection within 30 days shall constitute waiver by the franchisor of any right to object to the proposed transfer, sale, assignment, relocation, or change.

N.C.G.S. § 20-305(4). The parties have cited, and our research has disclosed, no North Carolina case interpreting this portion of N.C.G.S. § 20-305(4). Meeker cites the case of *Audio Enterprises v. B&W Loudspeakers*, 957 F.2d 406 (7th Cir. 1992), for the proposition that Federal Express is not first class mail. That case, however, interprets service of process under Rule 4(c)(2)(C)(ii) of the Federal Rules of Civil Procedure and is not helpful to our analysis. When first class mail is used as the method of service, often the determinative issue is when a party places a written document in the hands of the U.S. Postal Service. When a statute requires registered mail, however, the emphasis is on delivery of a written document. *See, e.g.*, N.C. Gen. Stat. § 55-1-41 (1990) (providing that notice to a corporation given by registered mail is effective when actually received).

We are also aware of the case of *Prince v. Poulos*, 876 F.2d 30 (5th Cir. 1989), which dealt with a statute requiring that parties serve their briefs by the most expeditious means. The court rejected the plaintiff's argument that the defendant's brief be stricken because it was not delivered by Federal Express, stating in a footnote that Federal Express is not governed by public authority and, thus, is not mail. We do not find this case persuasive, especially in light of *Warzynski v. Empire Comfort Systems*, 102 N.C. App. 222, 401 S.E.2d 801 (1991), cited by plaintiff in support of its position that Federal Express is an appropriate means of delivery.

In *Warzynski*, this Court held that an affidavit alleging service upon a foreign corporation by Federal Express delivery was sufficient for Rule 4(j3) which allows service to be made by "any form of mail, requiring a signed receipt." N.C. Gen. Stat. § 1A-1, Rule 4(j3) (1990). Although this case is not directly on point, it does stand for the proposition that a written document may be "mail," even though Federal Express delivers it, and it allows courts to escape the narrow interpretation of "mail" as being written documents entrusted only to the U.S. Postal Service. Moreover, in the recent case of *Norquip Rental Corp. v. Sky Steel Erectors, Inc.*, 854 P.2d 1185 (Ariz. Ct. App. 1993), the Court of Appeals

of Arizona concluded that plaintiff complied with the requirement of sending notice by registered mail when it used Federal Express for delivery. The Court noted that "[t]he statutorily required method is to assure receipt of the notice, not to make the described method mandatory so as to deny a right of suit when the required written notice within the specified time had actually been given and received." *Norquip*, at 1192.

North Carolina has subscribed to the principle that "[o]rdinarily, 'where a specific mode of giving notice is prescribed by statute, that method is exclusive.' " *In Re Appeal of Harris*, 273 N.C. 20, 24, 159 S.E.2d 539, 543 (1968) (quoting 39 Am. Jur. *Notice and Notices* § 9, and "[g]enerally speaking, a person relying on the service of a notice by mail must show a strict compliance with the requirements of the statute." *Id.*, (quoting 66 C.J.S. *Notice* § 18(e)(1) (1950)). In *Harris*, the North Carolina Supreme Court found that a notice sent by regular mail was not sufficient when the statute required that service be made by personal service or registered mail. In reaching this conclusion, the Court said, "[s]eemingly, the General Assembly intended to avoid, if possible, the necessity for hearings to determine whether or when a 'written copy' was served." *Id.* at 24, 159 S.E.2d at 542.

Mindful of *Harris*'s mandate that notice statutes be construed strictly, we believe that, where the controlling statute does not specifically require United States mail, delivery by Federal Express, which provides a signed receipt verifying delivery, *is* registered mail within the meaning of this statute. As the Court in *Harris* noted, the purpose behind requiring that the notice be sent by registered mail is to avoid disputes about whether or when a party receives notice. Delivery by Federal Express that provides signed receipts meets that purpose.

We, therefore, hold that delivery by Federal Express, with return receipt, is registered mail within the meaning of N.C.G.S. § 20-305. Under this interpretation, plaintiff in the present case gave proper notice of its objection to defendant's proposed relocation within the statutory period, and the trial court's conclusions of law 4 and 6 finding otherwise were erroneous.

We reverse the trial court's entry of summary judgment in favor of defendant and remand for further action consistent with this opinion.

NISSAN MOTOR CORP. v. FRED ANDERSON NISSAN

[111 N.C. App. 748 (1993)]

Reversed.

Judge ORR concurs.

Judge WELLS, writing separately, concurs in the result.

Judge WELLS concurring.

I fully concur with the majority on the disposition of the issues discussed in Sections I and II of the opinion.

On the issue of notice, discussed in Section III, I concur only in the result.

The terms "registered or certified mail" are found in numerous places in our statute books. The terms, frequently used by the General Assembly, have a commonly well-understood meaning, *i.e.*, mail of the United States Postal Service. Therefore, I cannot agree that the General Assembly intended to include Federal Express mail when it used those terms in G.S. 20-305(4). We do not need to reach or decide that question in this case.

The apparent interest and purpose of enacting the notice requirement in G.S. 20-305(4) was to prevent franchisors from stonewalling proposed dealership changes or modifications by not responding to the dealer's request or proposal. In this case, a timely response was sent and petitioner (plaintiff-appellant) does not contend that respondent's (defendant-appellee's) response was not duly and promptly received. As the record before us discloses, it was the receipt of respondent's (defendant-appellee's) letter which prompted petitioner's (plaintiff-appellant's) request for a hearing.

Under the circumstances, I cannot discern any harm or prejudice to petitioner (plaintiff-appellant) from respondent's (defendant-appellee's) failure to follow the statutory directive in sending its letter.