CARSWELL DISTRIBUTING COMPANY, Plaintiff v. U.S.A.'s WILD THING, INC., and
CALIFORNIA INFLATABLES COMPANY, INC., Defendants

No. COA 95-66

(Filed 19 March 1996)

**Courts § 16 (NCI4th)— California manufacturer—injection of
boats into stream of commerce—exercise of personal juris-
diction over manufacturer proper**

The exercise of personal jurisdiction over a California manu-
facturer did not violate due process, though the manufacturer
had no offices, facilities, sales agents, or employees in North
Carolina and had never conducted business in this state, since the
manufacturer entered into an agreement with a distributor to ship
boats to plaintiff in North Carolina; pursuant to this agreement
defendant manufacturer intentionally injected its boats into the
stream of commerce and purposely availed itself of the benefit of
North Carolina markets; given the wide distribution of boats con-
templated by defendant, it could reasonably expect to be sued in
this state in a defective product action; and the fact that this was
a suit for economic injury rather than personal injury did not pre-
clude application of the stream of commerce analysis.

**Am Jur 2d, Courts §§ 80, 106, 107.**

**Validity, as a matter of due process, of state statutes or
rules of court conferring in personam jurisdiction over
nonresidents or foreign corporations on the basis of iso-
lated business transaction within state. 20 ALR3d 1201.**

**Construction and application of state statutes or rules
of court predicating in personam jurisdiction over nonres-
idents or foreign corporations on making or performing a
contract within the state. 23 ALR3d 551.**

**Execution, outside of forum, of guaranty of obligations
under contract to be performed within forum state as con-**

ferring jurisdiction over non-resident guarantors under "long-arm" statute or rule of forum. 28 ALR4th 664.

Appeal by plaintiff from order entered 1 November 1994 by Judge Howard R. Greeson, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 20 October 1995.

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by W. Andrew Copenhaver and Timothy A. Thelen, for plaintiff-appellant.*

*Bell, Davis & Pitt, P.A., by William K. Davis and Stephen M. Russell, for defendant-appellee California Inflatables Company, Inc.*

LEWIS, Judge.

The sole issue in this appeal is whether the exercise of personal jurisdiction by a North Carolina court over defendant California Inflatables Company, Inc. ("CICO") violates due process. Defendant U.S.A.'s Wild Thing, Inc. is not a party to this appeal.

On 22 June 1994 plaintiff filed a complaint against defendants asserting various claims arising from the manufacture of "Wild Thing" inflatable boats by defendants and subsequent distribution to plaintiff. On 12 September 1994 CICO moved to dismiss the complaint on the ground that the court lacked personal jurisdiction over CICO. By order entered 1 November 1994, the court granted CICO's motion to dismiss on the ground that its exercise of personal jurisdiction over CICO would violate due process. Plaintiff appeals this order.

In its complaint, plaintiff alleges the following, in pertinent part:

Defendants, California corporations, formed a joint venture to manufacture, sell, and distribute Wild Thing boats throughout the United States. Plaintiff entered into a verbal agreement with defendants in which plaintiff agreed to distribute boats in North Carolina and parts of the Southeast United States. Forty-two (42) boats were ordered by and shipped to plaintiff in North Carolina. Plaintiff then discovered that the boats were defective.

Affidavits and exhibits offered by CICO show the following:

CICO is a California corporation with no offices, facilities, distributors, sales agents, or employees in North Carolina and has never conducted business in this state. CICO has no property, no bank

accounts, and no contracts in North Carolina, nor with any resident, including plaintiff.

North America's Wild Thing, Inc., ("NAWT") serves as the distributor of boats throughout the United States, Canada, and Mexico for Serious Boat Marketing PTY Limited ("Serious Boat"). On 25 February 1993 CICO and NAWT entered into a manufacturing agreement in which CICO agreed to manufacture inflatable boats for distribution by NAWT pursuant to NAWT's agreements with Serious Boat. In 1993 CICO began making boats under this agreement and directly shipped forty-two (42) boats, at NAWT's direction, to plaintiff in North Carolina. Under the terms of the manufacturing agreement, CICO billed NAWT, not plaintiff, for the boats sent to plaintiff.

A court's exercise of personal jurisdiction over an out-of-state defendant comports with due process under the Fourteenth Amendment of the United States Constitution if the defendant has "certain minimum contacts" with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283 (1940)).

For a showing of minimum contacts, a defendant's " 'conduct and connection with the forum State' " must be " 'such that he should reasonably anticipate being haled into court there.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 542 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980)). To establish such conduct and connection there must be " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Id.* at 474-75, 85 L. Ed. 2d at 542 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958)).

Minimum contacts can be found when the out-of-state defendant injects products into the "stream of commerce" with the expectation that the products will reach the forum state. *World-Wide Volkswagen Corp.*, 444 U.S. at 298, 62 L. Ed. 2d at 502. North Carolina courts have applied stream of commerce analysis to support the exercise of personal jurisdiction in defective product cases. *E.g., Warzynski v. Empire Comfort Systems*, 102 N.C. App. 222, 228-29, 401 S.E.2d 801, 805 (1991) (holding a corporation subject to the jurisdiction of our courts when it has "purposefully injected" a product into "the stream of commerce" without limiting the area of distribution "so as to

exclude North Carolina"). North Carolina cases that use stream of commerce analysis have not been overruled by the United States Supreme Court's decision in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 94 L. Ed. 2d 92 (1987). *Cox v. Hozelock, Ltd.*, 105 N.C. App. 52, 57, 411 S.E.2d 640, 644, *disc. review denied*, 331 N.C. 116, 414 S.E.2d 752, *cert. denied*, 506 U.S. 824, 121 L. Ed. 2d 42 (1992); *Warzynski*, 102 N.C. App. at 229, 401 S.E.2d at 805.

Here, CICO entered into a manufacturing agreement with NAWT, a company that served as the distributor for Serious Boat throughout the United States, Mexico, and Canada. In the manufacturing agreement, NAWT appointed CICO as its "exclusive manufacturer" with a commitment from CICO to "mass manufacture" a "substantial quantity" of boats for distribution by NAWT. The agreement also provided that CICO would ship the boats to various destinations designated by NAWT. By shipping the boats to plaintiff in North Carolina pursuant to this agreement CICO intentionally injected its boats into the stream of commerce and purposefully availed itself of the benefit of North Carolina markets. Given the wide distribution of boats contemplated by its agreement with NAWT and its direct shipment to North Carolina under this agreement, CICO could reasonably expect to be sued in North Carolina in a defective product action.

The fact that this is a suit for economic injury rather than personal injury does not preclude application of stream of commerce analysis here. When confronted with this issue, courts in other states have noted that states have an interest in protecting their residents from economic injury, as well as from personal injury. *E.g., Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 321 (D.Md. 1983); *Charles Gendler & Co., Inc. v. Telecom Equipment Corp.*, 508 A.2d 1127, 1139 (N.J. 1986). Due process does not require North Carolina courts to wait for personal injury to occur before exercising jurisdiction in defective product actions against out-of-state defendants. Must someone die before justice will lie?

Neither does it offend "traditional notions of fair play and substantial justice," for our courts to exercise jurisdiction here. A defendant who has "purposefully directed his activities" at residents of the forum state "must present a compelling case" to show that "other considerations" would make the exercise of jurisdiction by the forum state "unreasonable." *Burger King Corp.*, 471 U.S. at 477, 85 L. Ed. 2d at 544. CICO has not done so here.

CICO asserts that the costs and inconvenience of litigation in North Carolina would be an unfair and extreme burden. We note,

however, that a similar burden would be borne by plaintiff if required to litigate in California. The record does not show that CICO would be "severely disadvantaged" by litigation in North Carolina. *See Burger King Corp.*, 471 U.S. at 478, 85 L. Ed. 2d at 544 (listing such disadvantage as illustrative of an unfair exercise of jurisdiction). Further, it is not unfair play, to require CICO to defend here given its intentional decision to avail itself of the benefits of markets in North Carolina. North Carolina's interest in protecting its residents from harm caused by defective products outweighs any inconvenience to CICO.

The exercise of personal jurisdiction over CICO by a North Carolina court in this action does not violate due process.

Reversed and remanded.

Judge WALKER concurs.

Judge MARTIN, MARK D., concurs in the result.