LOUIS W. SMITH v. BERT MOORE, TRADING AND DOING BUSINESS AS
MOORE AUTO SALES.

(Filed 8 October, 1941.)

1. **Master and Servant § 21b—**

In order for the doctrine of *respondeat superior* to apply it must be made to appear that the relationship of master and servant existed between the wrongdoer and the person sought to be charged, and that the particular act in which the employee was engaged at the time was within the scope of his employment and was being performed in furtherance of his master's business, and proof of general employment alone is not sufficient.

2. **Automobiles § 24b—Evidence held insufficient to be submitted to the jury on the doctrine of respondeat superior.**

The evidence tended to show that defendant's automobile salesman and a prospective purchaser each were planning a trip to another town with

their respective friends for social purposes, that they joined their parties at the suggestion of the salesman for companionship and their own pleasure and incidentally so that the prospect could drive the demonstrator on the trip over to "try it out" and provide the means of transportation for the return trip. The evidence further tended to show that the prospect drove the demonstrator to the other town and that then the salesman asked the prospect how he liked the car and that after a favorable response nothing further was said in regard to selling the car, but that the parties thereafter engaged in purely social activities and that the accident in suit occurred some several hours later as the salesman was driving the car on the return trip. *Held:* The evidence is insufficient to be submitted to the jury on the doctrine of *respondeat superior*.

APPEAL by defendant from *Gwyn, J.,* at June-July Term, 1941, of RUTHERFORD. Reversed.

Civil action to recover damages for personal injuries received by plaintiff while a passenger on an automobile being operated by one Don Yelton, alleged agent or employee of defendant.

Defendant employed Yelton as an automobile salesman on a commission basis with a drawing account allowance. Yelton owned his demonstration car but operated it with defendant's license tag attached. He used the car both for business and for pleasure. Plaintiff had been regarded as a prospective purchaser and had been interviewed by defendant and by Yelton in September or October, 1940. At the time the automobile was demonstrated to him Yelton worked on his own time and paid his own expenses.

On Sunday afternoon, 5 January, 1941, plaintiff was at the home of Miss Mary Miller, with whom he had been keeping company. They had planned to go to Chimney Rock for dinner. Yelton went to the Miller home just as they were preparing to leave. He inquired as to where they were going. Upon being told he said: "Well, I want you to drive a good automobile. We want you to drive over to Morganton." He went on to say that he and Mrs. Yelton and a Mrs. Twitty were going to take his niece, Mrs. Cox, on her car and wanted plaintiff to drive Yelton's car over and have dinner and all come back together. They were going to the home of Mrs. Cox in Morganton. He said "for me to drive this one over there' and we would have dinner and all come back on his car, the one he wanted me to drive around."

Plaintiff and Miss Miller changed their plans, deciding to go with Yelton and his friends to Morganton. After they got out on the porch Yelton said to plaintiff: "Take my car down to the Washburn Filling Station and have five gallons of gas put in it." He replied: "My car has plenty of gas and has a heater and we will go in mine." Yelton replied: "No, I want you to drive this Ford up here and try it out." Plaintiff further testified: "He did not say anything to me on this occa-

sion other than he wanted me to drive this car and try it out on a trip."
When they got to Morganton Yelton asked plaintiff how he liked it and
plaintiff said: "It handles very nicely." Nothing further was said in
respect to plaintiff's use of the car or as to the nature of its operation,
and nothing was said about buying or selling.

The parties got together in Morganton at the home of Mrs. Cox about
6:30 or 7:00 o'clock. They remained there about 20 minutes and had
cocktails. They then drove around Morganton for about a half-hour,
returned and had more cocktails. They had a steak dinner at about
10:30. After dinner the party, other than Mrs. Cox, started back to
Rutherfordton on Yelton's car with Yelton driving. The automobile
was wrecked and plaintiff received personal injuries.

Appropriate issues were submitted to and answered by the jury in
favor of plaintiff.

From judgment thereon defendant appealed.

*Boucher & Boucher, Stover P. Dunagan, and Charles F. Gold, Jr., for
plaintiff, appellee.*
*Hamrick & Hamrick for defendant, appellant.*

BARNHILL, J. The doctrine of *respondeat superior* applies only when
the relation of master and servant is shown to exist between the wrong-
doer and the person so sought to be charged at the time of and in respect
to the very transaction out of which the injury arose. *Liverman v.
Cline,* 212 N. C., 43, 192 S. E., 849; *Linville v. Nissen,* 162 N. C., 95,
77 S. E., 1096; *Van Landingham v. Sewing Machine Co.,* 207 N. C.,
355, 177 S. E., 126; *Cole v. Funeral Home,* 207 N. C., 271, 177 S. E.,
126. Proof of general employment alone is not sufficient to impose
liability. *Tribble v. Swinson,* 213 N. C., 550, 196 S. E., 820; *Liverman
v. Cline, supra.* It must be made to appear that the particular act in
which the employee was at the time engaged was within the scope of his
employment and was being performed in the furtherance of his master's
business. *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852; *Liverman v.
Cline, supra,* and cases cited. Liability of the master is not to be deter-
mined by the extent of the authority of the agent, but by the purpose of
the act in which the agent was engaged at the time. *Grier v. Grier,
supra; Riddle v. Whisnant, ante,* 131.

Plaintiff and Miss Miller were invited to join Yelton's party for their
companionship and their own pleasure and so that plaintiff could drive
Yelton's car to Morganton and thus provide a means of transportation
for the return to Rutherfordton. The record clearly discloses that the
request that plaintiff drive Yelton's car on the trip over and "try it out"
was purely incidental to the primary purpose, which was social. Even

if we concede that the trip in part was for demonstration purposes—and *this is not supported by the evidence*—the business ended and the party was on as soon as they gathered at the home of Mrs. Cox. All the evidence discloses that from thence on the parties were gathered together for personal pleasure and entertainment. After arriving at the home of Mrs. Cox they had cocktails and then rode around Morganton for some time. They then returned for more cocktails and ended the evening's pleasure with a steak dinner at about 10:30. After this, near midnight, they started on the return trip and the accident occurred. The only reasonable conclusion to be drawn from this evidence is that plaintiff, Yelton and their associates on this occasion were engaged in a purely social enterprise, wholly disconnected from and in nowise related to Yelton's duties as an employee of defendant.

Defendant stresses the contention that Yelton was an independent contractor. He likewise argues that the record fails to disclose any sufficient evidence of negligence. As we are of the opinion that defendant's motion for judgment as of nonsuit should have been allowed the immateriality of these contentions at this time becomes apparent.

The judgment below is

Reversed.