JACK R. SHUFFLER v. BLUE RIDGE RADIOLOGY ASSOCIATES, P.A., AND
PHILIP T. HOWERTON, M.D.

No. 8425SC597

(Filed 5 March 1985)

1. **Physicians, Surgeons and Allied Professions § 11.1— negligent reading of x-rays—standard of practice established by defendant's testimony**

   In a medical malpractice action for the negligent reading of x-rays, defendant's own testimony that the standard of practice among radiologists with similar background and training in Morganton on 1 January 1980 required him to inform the physician requesting x-rays that there had been difficulty in obtaining the x-rays and that they were limited in scope was sufficient to establish the standard of care by which his actions would be judged. G.S. 9-21.12.

Shuffler v. Blue Ridge Radiology Assoc., P.A.

2. **Physicians, Surgeons and Allied Professions § 17.2— negligent reading of x-rays—evidence sufficient**

    Directed verdict should not have been entered for defendants where the evidence, in the light most favorable to plaintiff, showed that defendant did not inform the treating physician that x-rays were not a complete picture of plaintiff's cervical or thoracic spine, that defendant's failure to inform the treating physicians was a proximate cause of the delay in detection of the fracture in plaintiff's spine, and that plaintiff was damaged by the delay.

3. **Physicians, Surgeons and Allied Professions § 11.1— negligent reading of x-rays—expert testimony excluded—no familiarity with standard of practice in community**

    There was no error in the exclusion of deposition testimony as to the standards of practice among radiologists and in radiology departments of duly licensed hospitals where there was no evidence that the witness was familiar with the standards of practice among radiologists in Morganton or similar communities, or with the standards of practice in radiology departments of licensed hospitals in Morganton or similar communities. G.S. 90-21.12.

APPEAL by plaintiff from *Howell, Judge.* Order entered 15 February 1984 in Superior Court, BURKE County. Heard in the Court of Appeals 6 February 1985.

This is a medical malpractice action in which plaintiff alleged that defendant Howerton, a radiologist, was negligent in reading x-rays of plaintiff's cervical and thoracic spine. Plaintiff alleged that as a result of Howerton's negligence proper diagnosis and treatment of his injury was substantially delayed, thereby causing him great pain, permanent injury and substantial medical expense. Plaintiff also seeks to hold liable Howerton's employer, defendant Blue Ridge Radiology Associates, P.A., under the theory of respondeat superior.

At the close of plaintiff's evidence the court allowed defendants' motion for a directed verdict. Plaintiff appeals.

*McMurray and McMurray, by John H. McMurray, for plaintiff appellant.*

*Dameron and Burgin, by Charles E. Burgin, for defendant appellees.*

WHICHARD, Judge.

Plaintiff contends the court erred in granting defendants' motion for a directed verdict. To withstand defendants' motion,

plaintiff had to offer evidence establishing the following: (1) the standard of care applicable to Howerton; (2) breach of the standard of care; (3) proximate causation; and (4) damages. *See Lowery v. Newton*, 52 N.C. App. 234, 237, 278 S.E. 2d 566, 570 (1981). If plaintiff failed to present sufficient evidence to establish any one of these elements, defendants were entitled to a directed verdict. *Id.* In considering a defendant's motion for a directed verdict, the plaintiff's evidence must be taken as true and considered in the light most favorable to the plaintiff, giving him the benefit of every reasonable inference to be drawn therefrom. *Clark v. Bodycombe*, 289 N.C. 246, 250, 221 S.E. 2d 506, 509 (1976).

The evidence in the light most favorable to plaintiff tends to show the following:

On 1 January 1980 plaintiff fell from a truck and was injured. He was taken to Grace Hospital in Morganton and was examined by Dr. Scott, an emergency room physician. Because plaintiff was in considerable pain, Dr. Scott sent him to the radiology department for x-rays of his chest, left shoulder, cervical spine, and thoracic spine. The x-rays were taken by the hospital's technologists and were interpreted by defendant Howerton. Howerton was a radiologist employed by defendant Blue Ridge Radiology Associates, P.A., a professional association of radiologists who provided services to Grace Hospital. The x-rays of plaintiff's spine showed no identifiable fractures; however, the x-rays were incomplete in that they did not show all of plaintiff's last cervical vertebra, identified as C7, or all of his first thoracic vertebra, identified as T1. The C7-T1 level of plaintiff's spine was not completely shown on the x-rays because it was obscured by plaintiff's shoulders. A complete picture of this level of plaintiff's spine could have been obtained by manipulating plaintiff's arms, if possible, into a certain position. Howerton testified that the technologist was apparently unable to manipulate plaintiff's arms into the necessary position and therefore a complete picture of this area of plaintiff's spine was not obtained.

Howerton prepared a written report in which he indicated that the x-rays showed no identifiable fractures of plaintiff's cervical or thoracic spine. The report did not mention that there was difficulty in obtaining the x-rays or that the x-rays were incomplete; however, Howerton testified that he verbally informed

Dr. Scott that there had been difficulty in obtaining the x-rays. Howerton testified that he was familiar with the standards of practice among radiologists with similar training and experience in Morganton or similar communities on 1 January 1980, and that if a physician requested x-rays of a patient's thoracic and cervical spine, and complete x-rays showing the C7 area of the cervical spine could not be obtained, the standard required the interpreting radiologist so to inform the requesting physician, either verbally or by written report. He further testified that in his opinion he acted in accordance with that standard in interpreting plaintiff's x-rays and in advising Dr. Scott of their limited scope.

Dr. Scott testified that it was not reported to him that there was any difficulty in obtaining plaintiff's x-rays or that the x-rays were limited in nature, and that he did not recall conferring with Howerton at any time about the x-rays. After Dr. Scott received the written report on the x-rays, he still felt it necessary to admit plaintiff to the hospital. Plaintiff was referred to a general surgeon, Dr. Lee, who was thereafter plaintiff's attending physician. Dr. Scott informed Dr. Lee that plaintiff's x-rays were normal. Either that day or the next Dr. Lee saw Howerton's report on the x-rays and interpreted it as referring to a complete study. He testified that he did not have a conversation with Howerton about plaintiff. When pressed further, he stated that he did not recall whether Howerton had ever told him that the x-rays were a limited study and that C7 was not visualized on the x-rays. He stated that he relied in part on Howerton's report in diagnosing plaintiff's condition, and that had he been told that C7 was not fully visualized on the x-rays, he would have reordered x-rays. Howerton testified that he may have mentioned to Dr. Lee that the x-rays were an incomplete study.

Plaintiff was admitted to the hospital on 1 January 1980 and remained there for twelve days. On 5 January 1980 Dr. Lee sent plaintiff for more shoulder x-rays because he continued to complain of shoulder pain. Again, Dr. Lee did not order more cervical spine x-rays because he presumed the initial x-rays were a complete study. After plaintiff was released from the hospital he continued to have severe pain and his wife noticed a big knot on the back of his neck. He went back to see Dr. Lee who then ordered further thoracic and cervical spine x-rays. The additional x-rays were taken on 23 January 1980 and revealed that plaintiff had a

fracture-dislocation at the C7-T1 level of his spine. Plaintiff immediately went to a hospital in Winston-Salem where he was examined by a neurosurgeon, Dr. McWhorter. As a temporary measure Dr. McWhorter placed plaintiff in a traction device, thereby relieving his pain. Subsequently, plaintiff's condition was corrected as much as possible by surgery.

While the evidence does not show that plaintiff suffered any permanent injury as a result of the delay in proper diagnosis and treatment, it does show that he was in substantial pain from 1 January 1980 until 23 January 1980 and that he could have been relieved of the pain much earlier had the fracture in his spine been detected promptly. The evidence also tends to show that plaintiff could have avoided part of his medical bills had the fracture been detected promptly.

[1] Because plaintiff's claims arise out of the furnishing of medical care, defendants can be liable for damages only if it is shown by the greater weight of the evidence that the care provided by Howerton did not accord with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action. *See* G.S. 90-21.12. We find Howerton's own testimony sufficient to establish that the standards of practice among radiologists with similar training and experience in Morganton on 1 January 1980 required that Howerton inform the physician requesting the x-rays, either verbally or by written report, that there had been difficulty in obtaining the x-rays and that therefore the x-rays were limited in scope. Thus, Howerton's own testimony established the standard of care by which his actions are to be judged.

[2] Dr. Scott's testimony which indicates that Howerton did not inform him of the limited scope of the x-rays, and the evidence showing that Howerton's written report did not contain this critical information, taken together as true, establish Howerton's breach of the standard of care. The evidence presented was also sufficient to establish that Howerton's failure to inform Dr. Scott or Dr. Lee that the x-rays were not a complete picture of plaintiff's cervical or thoracic spine was a proximate cause of the delay in detection of the fracture in plaintiff's spine, and that plaintiff

Shuffler v. Blue Ridge Radiology Assoc., P.A.

was damaged by such delay. Further, since the evidence tends to show that Howerton was an employee of defendant Blue Ridge Radiology Associates, P.A., and was acting in the course of his employment and in furtherance of the association's business when the negligence occurred, it is sufficient to support application of respondeat superior to hold Blue Ridge Radiology Associates, P.A., liable for such negligence. *See Smith v. Moore*, 220 N.C. 165, 167, 16 S.E. 2d 701, 702 (1941).

We conclude that the evidence, in the light most favorable to plaintiff, was sufficient to establish each element of plaintiff's claims and therefore to withstand defendants' motion for a directed verdict. Accordingly, the order allowing a directed verdict for defendants is reversed.

[3] In determining the sufficiency of the evidence we did not consider those portions of Dr. McWhorter's deposition which were excluded because we believe they were excluded properly. The court refused to allow plaintiff to read into evidence Dr. McWhorter's testimony concerning (1) the standards of practice among radiologists and in radiology departments of duly licensed hospitals and (2) whether the actions of Howerton and the radiology department at Grace Hospital accorded with those standards. Plaintiff contends that was error. Although evidence was presented establishing Dr. McWhorter's qualification as a medical expert specializing in neurosurgery, no evidence was presented to show that he was familiar with the standards of practice among radiologists in Morganton or similar communities, or with the standards of practice in radiology departments of licensed hospitals in Morganton or similar communities. Evidence establishing Dr. McWhorter's familiarity with and knowledge of those standards was necessary to qualify him to testify on those subjects. *See* G.S. 90-21.12. Since Dr. McWhorter's qualification to testify as to the standards of practice among radiologists in Morganton or similar communities at the time in question was not established, the exclusion of his testimony was proper.

Reversed.

Judges WELLS and BECTON concur.