WILSON HAYMORE AND SANDRA LEE HAYMORE, PLAINTIFFS v. THE THEW SHOVEL COMPANY, LORRAIN CRANE, AND THE KOEHRING COMPANY, DEFENDANTS AND THIRD PARTY PLAINTIFFS v. ALLIED SIGNAL, INC., THIRD PARTY DEFENDANT

No. 9321SC190

(Filed 16 August 1994)

1. **Products Liability § 3 (NCI4th)— crane brake failure—who manufactured boom brake cylinder—jury question**

In an action to recover for injuries sustained when the brake on a crane malfunctioned, the trial court properly allowed the jury to decide whether defendant Koehring Co. was the apparent manufacturer of the subject boom brake cylinder where defendant sold the boom brake cylinder to the crane owner; the "chamber" apparatus of the brake was clearly identified by the trademark of the third-party defendant; and there was therefore a clear issue of fact which a jury should decide.

**Am Jur 2d, Products Liability §§ 164-177.**

**Products liability: Manufacturer's responsibility for defective component supplied by another and incorporated in product. 3 ALR3d 1016.**

**Products liability: Necessity and sufficiency of identification of defendant as manufacturer or seller of product alleged to have caused injury. 51 ALR3d 1344.**

HAYMORE v. THEW SHOVEL CO.

[116 N.C. App. 40 (1994)]

2. **Products Liability § 29 (NCI4th)— crane not inherently dangerous—cases involving nondelegable duty inapplicable**

Since cranes are not inherently dangerous, plaintiff's reliance on cases involving nondelegable duty was misplaced.

**Am Jur 2d, Products Liability §§ 740, 741.**

**Products liability: Cranes and other lifting apparatuses. 13 ALR4th 476.**

3. **Evidence and Witnesses § 582 (NCI4th)— OSHA report— evidence as to cause of accident properly excluded—report based on crane operator's belief—author of report not expert on crane brake failure**

In an action to recover for injuries sustained when the brake on a crane malfunctioned, the trial court did not err in refusing to allow an OSHA report and testimony from its author to be introduced in their entirety, since the author's conclusions as to the cause of the accident were based only on the beliefs of the crane operator, and the trial court determined that the author was not an expert on the subject of crane brake mechanisms. N.C.G.S. § 8C-1, Rule 803(8).

**Am Jur 2d, Expert and Opinion Evidence § 70.**

4. **Evidence and Witnesses § 2152 (NCI4th)— cause of accident—legal conclusion—nonexpert witness not allowed to give**

The trial court properly prohibited an OSHA safety inspector from offering his opinion on the cause of a crane accident as an expert witness because this was a legal conclusion which the witness was not qualified to make, and the witness had no specialized knowledge of the boom brake cylinder operation which he attributed as the cause of the accident.

**Am Jur 2d, Expert and Opinion Evidence §§ 1, 136 et seq.**

5. **Evidence and Witnesses § 1099 (NCI4th)— admissions in pleadings not allowed by trial court—no error**

The trial court did not err in refusing to permit plaintiff to introduce admissions made by defendant in the pleadings during the testimony of a witness who knew nothing about the matters admitted.

**Am Jur 2d, Evidence §§ 774 et seq.; Trial §§ 321 et seq.**

**6.  Products Liability § 29 (NCI4th)— plaintiff's proposed jury instruction—jury question taken for granted—standard of care not established—instruction not given—no error**

In an action to recover for injuries sustained when the brake on a crane malfunctioned, the trial court did not err in refusing to give plaintiff's proposed instruction that defendants admitted that the presence of foreign substances in the canister of a boom brake cylinder would constitute negligence by defendants where, contrary to plaintiff's contention, the standard of care was not established by the testimony of a defense witness that it would not be within his expectations of good manufacturing practices for such a canister to have loose particles in it, and the proposed instruction assumed that defendants were the apparent manufacturer of the cylinder when this was a question for the jury.

**Am Jur 2d, Trial § 1093.**

**7.  Trial § 464 (NCI4th)— trial court's remarks to jury after verdict—no effect on jury—no reversible error**

Though the trial court's remarks to the jury after its verdict was reached were perhaps inappropriate under N.C.G.S. § 1A-1, Rule 51(c), they did not constitute reversible error, since there was no "effect on the jury" from the remarks.

**Am Jur 2d, Trial §§ 276 et seq.**

Appeal by plaintiffs and cross appeal by defendant, the Koehring Company, from judgment filed 16 October 1992 by Judge Judson D. DeRamus, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 5 January 1994.

Plaintiff was working as an employee of Famco, Inc. at the R.J. Reynolds' Bailey Power Plant in Winston-Salem on 22 October 1987. He was engaged in construction work approximately seven stories above the ground.

A Koehring Crane supplied by C.P. Buckner, Inc. and operated by Mr. Edward Bell was located at the construction site. Mr. Bell was using the crane to lift a roll of conveyor material weighing 1,600 pounds. As the conveyor material was moved into place, it suddenly dropped and struck the plaintiff. The impact caused several injuries to plaintiff including a broken pelvis.

After the accident, the North Carolina Department of Labor sent Mr. John Saunders, a safety inspector, to the site to conduct an OSHA investigation. The OSHA report concluded that the brake operation on the crane malfunctioned causing the sudden fall of the conveyor material. A mechanic from C.P. Buckner, Inc., Mr. Bernard McCaul, inspected the crane several days afterwards and found particles which appeared to be paint chips inside the air chamber of the boom brake cylinder. The crane has a "spring on/air off" brake. A spring permanently keeps the brake locked until air is forced into the cylinder. The air compresses the spring, releasing the brake. Mr. McCaul stated his belief that these particles caused the boom brake cylinder to malfunction.

Prior to the accident, C.P. Buckner, Inc. replaced the boom brake cylinder during an overhaul of the crane in August of 1987. The replacement boom brake cylinder was ordered from a distributor of Koehring Crane. Koehring Crane sent the cylinder directly to C.P. Buckner, Inc. The air chamber component of the boom brake cylinder was made by the Bendix Heavy Vehicle Division of Allied Signal, Inc. The chamber was marked with a Bendix/Westinghouse trademark.

Plaintiff seeks damages from the Thew Shovel Company, Lorrain Crane, and the Koehring Company, for negligent manufacture. Defendant Thew Shovel was the original company, which was later purchased by Koehring. Because it was located in Lorrain, Ohio, the crane division of Koehring was called Lorrain Crane. The three defendants were represented by one counsel. Before trial, defendants made a motion for summary judgment, which the trial court denied. At trial, the jury returned a verdict for defendants.

*Blanchard, Twiggs, Abrams & Strickland, P.A., by Douglas B. Abrams, for plaintiff-appellants.*

*Wishart, Norris, Henninger & Pittman, P.A., by June K. Allison and Robert J. Wishart, for defendant-appellees and third party plaintiffs.*

ORR, Judge.

I.

[1] Plaintiff contends that the trial court erred by not ruling as a matter of law that Koehring was the apparent manufacturer of the subject boom brake cylinder. We believe that the trial judge was correct in allowing the jury to decide this question.

HAYMORE v. THEW SHOVEL CO.

[116 N.C. App. 40 (1994)]

This Court considered a similar scenario in *Warzynski v. Empire Comfort Systems, Inc.*, 102 N.C. App. 222, 401 S.E.2d 801 (1991). *Warzynski* involved a Spanish manufacturer of gas heaters, Safel-Inelsa Orbaiceta, S.A. (Safel), which sold in the United States through Empire Comfort Systems (Empire). Plaintiff contended that their Empire gas heater caused their house to burn down. The trial court granted summary judgment in favor of Empire Comfort Systems on the basis of the "sealed container defense." N.C. Gen. Stat. § 99B-2(a). This Court held that the trial court erred in granting summary judgment for Empire because there was a genuine issue of material fact as to the apparent manufacturer of the gas heater. 102 N.C. App. at 225, 401 S.E.2d at 803.

In so holding, this Court adopted § 400 of the Restatement (Second) of Torts, which says:

> One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.

Restatement (Second) of Torts § 400 (1965). In the same opinion this Court quoted comment d of § 400 of the Restatement (Second) of Torts, which acts to limit the scope of § 400. Comment d, in relevant part, says:

> [W]here it is clear that the actor's only connection with the chattel is that of a distributor of it (for example as a wholesale or retail seller), he does not put it out as his own product and the rule stated in this section is inapplicable. Thus, one puts out a chattel as his own product when he puts it out under his name or affixes to it his trade name or trademark. . . . *However, where the real manufacturer or packer is clearly and accurately identified on the label or other markings on the goods, and it is also clearly stated that another who is also named has nothing to do with the goods except to distribute or sell them, the latter does not put out such goods as his own.*

Restatement (Second) of Torts § 400 comment d (1965) (emphasis added).

This Court considered the lack of any "made in Spain" references in Empire's advertising of the heaters. In fact, the record stated that one of Empire's advertisements stated that the heater was "America's best made and best-selling unvented gas wall furnace." Nowhere on the package was there an indication that Safel was the manufacturer.

HAYMORE v. THEW SHOVEL CO.

[116 N.C. App. 40 (1994)]

The only indication that the heater was *not* made by Empire was a decal on the carton and heater saying the heater was made in Spain. On the basis of these facts found in the record, this Court concluded that the trial court should have submitted to the jury the question of whether Empire was the apparent manufacturer of the gas heaters. *Warzynski* at 228, 401 S.E.2d at 805.

The instant case is similar to *Warzynski* in that there is a clear issue of fact which a jury should decide. While Koehring sold the boom brake cylinders, the "chamber" apparatus of the brake was clearly identified by the Bendix/Westinghouse trademark. In *Warzynski* we ruled that the trial court erred in not submitting this issue to the jury when the status of a company as "apparent manufacturer" was in dispute. In the instant case a similar question existed, and so we hold that the issue was properly submitted to the jury by the trial court.

[2] Plaintiff argues that Koehring had a non-delegable duty which prevents assertion of defenses available in negligence cases. Relying on *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), in which the Court stated that a person "who employs an independent contractor to perform an inherently dangerous activity may not delegate to the independent contractor the duty to provide for the safety of others." *Id.* at 352, 407 S.E.2d at 235. In making this argument, plaintiff contends that cranes are "inherently dangerous." In *McCollum v. Grove Mfg. Co.*, 58 N.C. App. 283, 293 S.E.2d 632 (1982), *aff'd*, 307 N.C. 695, 300 S.E.2d 374 (1983), we considered an alleged design defect in a crane which plaintiff claimed caused an accident at a worksite. Plaintiff claimed the crane was inherently dangerous. This Court found from the record that there was "no evidence that the crane was an inherently dangerous instrumentality." *Id.* at 291, 293 S.E.2d at 637. Based on *McCollum's* reasoning that cranes are not inherently dangerous, plaintiff's reliance on cases involving non-delegable duty is misplaced.

II.

[3] Plaintiff's second and third assignments of error concern the trial court's refusal to allow the OSHA report and testimony from its author, Mr. Saunders, to be introduced in their entirety. The trial court allowed Mr. Saunders to introduce the report and discuss its findings, but it would not allow him to state the report's conclusion that the accident was caused by brake failure. In his report, Mr. Saunders had stated, "[i]n summary, a crane used to lift conveyor belting had a

brake malfunction causing the load to drop." Plaintiff first contends that the conclusions of the report concerning the cause of the accident should have been admitted into evidence. Plaintiff also contends that the conclusions of Mr. Saunders on what he considered to be the cause of the accident should have been allowed.

The trial court properly introduced the OSHA report pursuant to N.C.G.S. § 8C-1, Rule 803(8), which reads in pertinent part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . .

(8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or, (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (c) in civil actions and proceedings and against the State in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

N.C.G.S. § 8C-1, Rule 803(8).

This Court considered a similar fact pattern involving Rule 803(8) in *Mickens v. Robinson*, 103 N.C. App. 52, 404 S.E.2d 359 (1991). In *Mickens*, a police officer investigated an automobile accident scene and took a statement which tended to establish the cause of the accident. The court allowed the officer to read the following quote taken from his report of what the witness said:

Vehicle # 1 traveling east on West Sixth Street failed to stop for a red light and was involved in an accident with vehicle # 2 traveling north on Main Street. Account given by disinterested witness.

*Id.* at 56, 404 S.E.2d at 362. This Court said that the trial court erred by allowing the officer to read this statement in response to being asked if he had any "conclusions as to the cause of the accident." *Id.* at 57, 404 S.E.2d at 362. The Court reasoned that the question asked the officer to express an opinion as to fault in the accident. *Id.* This Court further held, however, that the officer saved the testimony "by limiting his response to repeating from his report what he had been told about what happened. The sum total of Officer Turner's testimony

was to disavow any assessment or attribution of fault." *Id.* Accordingly, the trial court's error was held to be non-prejudicial. *Id.*

Applying *Mickens* to the instant case, the trial court was correct in not allowing Mr. Saunders to offer his report's conclusions on the cause of the accident. Much like the policeman whose conclusions were based on an eyewitness, Mr. Saunders' conclusions were based only on the beliefs of the crane operator, Mr. Bell. The OSHA report's statement that it was Mr. Bell's opinion that brake failure caused the accident was admitted into evidence. However, Mr. Saunders' own "conclusions as to the cause of the accident" could not be given to the jury because the trial court, within its discretion, determined that he was not an expert on the subject of crane brake mechanisms. Thus, the trial court followed *Mickens* in not allowing Mr. Saunders to share his conclusions as to the cause of the accident.

[4] Plaintiff's next assignment of error is that Mr. Saunders was improperly prohibited from offering his opinion on the cause of the accident as an expert witness. Conclusory statements made by experts are admissible if the experts are qualified to make them. *State v. Weeks*, 322 N.C. 152, 164, 367 S.E.2d 895, 903 (1988). In *Weeks*, a homicide case in which defendant sought to use an insanity defense, the trial court refused to admit into evidence conclusory statements by psychiatrists that defendant acted under a violent passion and that defendant could not conform his behavior to the requirements of the law as a result of his mental disorder. The Court held that "[s]uch testimony embraces precise legal terms, definitions of which are not readily apparent to medical experts." *Id.* at 166, 367 S.E.2d at 904. Accordingly, the Court upheld the trial court's decision to not allow legal conclusions by the experts. The Supreme Court and this Court have made similar decisions in other cases. *See State v. Ledford*, 315 N.C. 599, 340 S.E.2d 309 (1986) (under new rules experts still precluded from stating that a legal standard has been met, i.e., that injuries were the proximate cause of death), *Murrow v. Daniels*, 85 N.C. App. 401, 355 S.E.2d 204, *rev'd and remanded on other grounds*, 321 N.C. 494, 364 S.E.2d 392 (1987) (expert's opinion that defendant's lack of security was "gross negligence" an improper legal conclusion).

We believe that the trial court properly did not allow Mr. Saunders to testify on his belief of the cause of the accident because this was a legal conclusion which Mr. Saunders was not qualified to make. We also note that, though he had investigated crane accidents

before, Mr. Saunders did not have any specialized knowledge of the boom brake cylinder operation which he attributed as the cause of the accident. In fact, he admitted in court that this was his first case dealing with a crane boom brake malfunction, and that his conclusions on the defectiveness of the brake system were based solely on the conclusions of other people. Out of the presence of the jury, the trial court stated:

> This Court will consider a determination of expertise if you show training and experience of this witness relative to matters in question such as the operation of these brake cylinders and his opportunity to inspect it and otherwise determine what was going wrong with it. So far I don't think there's been enough showing of any expertise to deduce what happened to this particular cylinder, whether it's contained in the report or not.

Plaintiff made no attempt to further establish Mr. Saunders' expertise on the subject. On the basis of the above cited authority and facts, we believe the trial court acted properly in not allowing Mr. Saunders to testify as an expert on his conclusion as to the cause of the accident.

III.

[5] Plaintiff also assigns error to the trial court's refusal to introduce admissions made by the defendant in the pleadings. The admissions concerned the ownership of the crane and the chain of suppliers of the boom brake cylinder. Plaintiff sought to introduce these admissions during the testimony of Mr. Bernard McCaul, a mechanic for C.P. Buckner, Inc. In response to the request, the trial court stated:

> If you want to read these things that are judicially admitted by the defendants, I think there is an appropriate time and place for that, but not during the testimony of a witness that doesn't have specific knowledge of those things that are admitted. . . .

Plaintiff cites *Brown v. Lyons*, 93 N.C. App. 453, 457, 378 S.E.2d 243, 246 (1989). *Lyons* states that "[a] party is bound by his pleadings and may not take a contradictory position." *Id.* However, in the instant case, plaintiff does not assert that the defendant was improperly permitted to introduce testimony contrary to its pleadings. Plaintiff only asserts that introduction of the pleadings was not allowed at a certain time. We believe that the trial court was acting within its authority by delaying the introduction of the admissions. In addition, we note that there was no other attempt later in the trial by the plaintiff to offer

admissions made by defendants in their pleadings and we therefore find no merit in this assignment of error.

## IV.

[6] Plaintiff's next assignment of error concerns the trial court's rejection of plaintiff's proposed jury instruction. Proposed special jury instructions must follow the guidelines set forth in N.C.G.S. § 1-181. The trial court must give the instructions requested, at least in substance, if they are proper and supported by evidence. *State v. Lynch*, 46 N.C. App. 608, 265 S.E.2d 491, *rev'd on other grounds*, 301 N.C. 479, 272 S.E.2d 349 (1980). However, the trial court may exercise discretion to refuse instructions based on erroneous statements of the law. *State v. Agnew*, 294 N.C. 382, 395, 241 S.E.2d 684, 692, *cert. denied*, 439 U.S. 830, 58 L. Ed. 2d 124 (1978).

Plaintiff submitted a jury instruction stipulating that the defendant admitted that the presence of foreign substances in the canister of a boom brake cylinder would be negligence. Plaintiff based this instruction on the following testimony of Mr. Norman Hargreaves, an engineer for defendant:

Q: Well, do you have an opinion satisfactory to yourself and to a reasonable certainty in the field of engineering that you've told us about whether the failure or that—or whether receiving this boom brake cylinder in such a condition would be a violation of acceptable engineering standards of design, manufacture—and manufacture?

Mr. Carruthers: Objection.

The Court: Overruled.

A: I think as I mentioned I wouldn't talk about design, but certainly it would not be within my expectations of good manufacturing practices.

On the basis of this testimony, plaintiff asked the trial court for the following jury instruction:

The Defendants, The Thew Shovel Company, Lorrain Crane, and the Koehring Company, admit and do not contest that if the facts of this case are that the subject rotochamber was delivered to C.P. Buckner containing contaminants within the rotochamber that the rotochamber was defective and that the rotochamber would contain a manufacturing defect. Therefore, if you find by

the greater weight and to your satisfaction that the subject rotochamber as delivered to C.P. Buckner did in fact contain contaminants of such a size and character as to obstruct the air exhaust and that these contaminants did in fact obstruct the rotochamber and prevent the rotochamber from functioning properly, and that therefore these obstructions caused the boom of the crane to fall, then you should answer the first issue "Yes" in favor of the Plaintiffs.

Plaintiff cites *Shuffler v. Blue Ridge Radiology Assoc., P.A.*, 73 N.C. App. 232, 326 S.E.2d 96 (1985). In *Shuffler*, plaintiff claimed defendant was negligent in providing medical care. On defendant's motion for directed verdict, the trial court held that defendant's uncontradicted testimony on the standard of practice among radiologists was sufficient to establish the standard of care. In the instant case, plaintiff contends that the testimony of defendants' engineer on the standard of care for boom brake cylinders should establish the relevant standard. If this were permitted, plaintiff contends, the jury only has to answer whether there were contaminants in the air canister.

We believe the trial court was acting within its discretion established in *Agnew* when it denied the proposed jury instruction. We first distinguish *Shuffler* from this case on the basis of the credibility of a standard of care established. In *Shuffler*, the defendant, a physician, described the standard of care which he owed his own patients. Thus, the only remaining question for the jury was whether this standard was breached. In the instant case, plaintiff contends that the standard of care is established by the testimony of one witness' remark that "it would not be within my expectations of good manufacturing practices" for an air canister to have loose particles in it. We do not believe that the determination of the standard of care is established based upon this response to counsel's question.

We further note that even if we considered the testimony of Mr. Hargreaves to establish the standard of care, the jury instruction would still not be proper in this case. There was no prior issue for the jury to consider in *Shuffler* before deciding whether the defendant breached the established standard of care, and therefore the tendered instruction was correct. In plaintiff's proposed jury instruction in the instant case, the issue of whether defendants were the apparent manufacturer is an issue which must be decided prior to a determination of whether defendants were negligent. This prior issue was taken for granted by plaintiff's proposed jury instruction. By the proposed

**HAYMORE v. THEW SHOVEL CO.**

[116 N.C. App. 40 (1994)]

instruction, if contaminants are. found to be present, defendants are liable (without any determination of whether defendants were the apparent manufacturer). If the jury had concluded that defendants either were the apparent manufacturer or that defendants had a reasonable opportunity to inspect, then the jury could have proceeded to the question of whether there were contaminants in the chamber, and *Shuffler* would be applicable. However, since the jury answered in the negative on its first two instructions concerning whether defendants were the apparent manufacturer, there would be no reversible error even if we considered the standard of care to be established by Mr. Hargreaves' testimony.

For the above reasons, the trial court was acting within its discretion under *Agnew* when it refused to allow plaintiff's proposed jury instructions.

### V.

[7] Plaintiff's next assignment of error is that the trial court erred in making comments to the jury after their verdict was reached. Following the jury's presentation of their verdict, the court made the following comments:

> Since you're not going to be involved in any other matters, I say to you I agree particular[ly] with your verdict with respect to the third issue on negligence and the Court felt like it was very close to being a matter of law, there was insufficient evidence to take the showing of negligence as to the defendant and third-party defendants beyond the realm of conjecture and speculation and surmise.

The relevant rule on comments by judges to the jury is Rule 51(c), which states that "[t]he judge shall make no comment on any verdict in open court in the presence or hearing of any member of the jury panel." N.C.G.S. § 1A-1, Rule 51(c). This Court discussed the effect of prejudicial statements made by judges before the jury in *Worrell v. Hennis Credit Union*, 12 N.C. App. 275, 182 S.E.2d 874 (1971). In *Worrell* we stated:

> The criterion for determining whether the trial judge deprived a litigant of his right to a fair trial by improper comments or remarks in the hearing of the jury is the probable effect on the jury.

IN RE CHASSE

[116 N.C. App. 52 (1994)]

*Id.* at 278-79, 182 S.E.2d at 877. Applying *Worrell* to the instant case, we find that there is no "effect on the jury" from the judge's remarks in the instant case. The remarks were made after the verdict was returned. Plaintiff does not contend that the judge was unfair or impartial during the trial. While the remarks made by the court were perhaps not appropriate under a strict reading of Rule 51, they do not constitute reversible error.

Plaintiff's final assignment of error is that the trial court erred in granting its own motion for a directed verdict after the jury had returned its verdict. The jury improperly proceeded to the issue of defendants' negligence after deciding that the defendants were not the apparent manufacturer. The judge's *sua sponte* motion for directed verdict reaffirmed the unnecessary verdict of the jury on the issue. It is not necessary for us to decide this issue because the trial court was not required to address the defendants' negligence at all after the jury concluded that the defendants were not the apparent manufacturer.

For the reasons stated above, we affirm the judgment of the trial court. Accordingly, we need not address defendants' cross-assignments of error.

Affirmed.

Judges LEWIS and JOHN concur.