IN THE SUPREME COURT OF NORTH CAROLINA

No. 173PA24

Filed 12 December 2025

BRITTANY JEANNE COTTLE, TERRY ALAN COTTLE, and CYNTHIA BALKCUM COTTLE

v.

KEITH PINKNEY MANKIN, MD; JEANNE HALL, RN, MSN, FNP-C; BRADLEY K. VAUGHN, MD; WALLACE F. ANDREW JR., MD; KARL STEIN; JOSEPH U. BARKER, MD; MARK R. MIKLES, MD; RALEIGH ORTHOPAEDIC CLINIC, P.A.; and RALEIGH ORTHOPAEDIC RESEARCH FOUNDATION

On discretionary review pursuant to N.C.G.S. § 7A-31(c) of a unanimous decision of the Court of Appeals, 294 N.C. App. 20 (2024), affirming in part and reversing in part summary judgment entered on 16 March 2022 by Judge William R. Pittman in Superior Court, Wake County. On 21 March 2025, the Supreme Court allowed plaintiffs' cross-petition for discretionary review. Heard in the Supreme Court on 17 September 2025.

*Mast, Johnson, Wright, Booker & Van Patten, P.A., by Charles Mast, Nichole G. Booker, and Caroline Parrish, for plaintiff-appellees.*

*Robinson, Bradshaw & Hinson, P.A., by Matthew W. Sawchak, Erik R. Zimmerman, Garrett A. Steadman, and Zachary A. Johnson; Huff, Powell & Bailey, LLC, by Pankaj Shere and Beth S. Reeves, pro hac vice, for Raleigh Orthopaedic Clinic, P.A., and Raleigh Orthopaedic Research Foundation, defendant-appellants.*

*Brown Moore & Associates, PLLC, by Jon R. Moore; Ward and Smith, P.A., by Christopher S. Edwards; and Tatum & Atkinson, PLLC, by Jon Ward, for North Carolina Advocates for Justice, amicus curiae.*

*Roberts & Stevens, PA, by David C. Hawisher, for North Carolina Association of Defense Attorneys, amicus curiae.*

*Sarah Motley Stone, for North Carolina Healthcare Association, Carolinas Medical Group Management Association, North Carolina Medical Society, and North Carolina Independent Physician Practice Association, amici curiae.*

BARRINGER, Justice.

Informed by the text of the controlling statute, our rules of statutory construction, and the relevant caselaw, we hold plaintiffs' negligent retention claim against a corporate medical practice is a "medical malpractice action" as defined by N.C.G.S. § 90-21.11 (2023). Accordingly, plaintiffs' negligent retention claim is barred by the statute of repose. N.C.G.S. § 1-15(c) (2023).

## I.    Background

On behalf of their daughter, Brittany Cottle, plaintiffs Terry Cottle and Cynthia Cottle commenced this action against defendants for the alleged substandard medical care provided to Brittany during her time as a patient at Raleigh Orthopaedic Clinic (ROC).

## A. Factual Background

Plaintiffs' complaint alleges the following events: In 2010, when Brittany was fourteen years old, she saw Dr. Keith Mankin, an orthopedist at ROC, seeking relief from her back pain. Dr. Mankin ordered an X-ray of Brittany's spine and diagnosed her with spinal stenosis and mild scoliosis. Three months later, an MRI indicated that Brittany did not suffer from spinal stenosis, but rather only minimal disc desiccation. Nevertheless, Dr. Mankin performed surgery on Brittany, removing a

portion of her vertebra to relieve pressure ostensibly caused by spinal stenosis and fusing a portion of her spine in place.

Sometime in 2011, a father of one of Dr. Mankin's surgical patients made a complaint to Dr. Wallace Andrew, an orthopedist at ROC, and Karl Stein, the executive director of ROC. He claimed that Dr. Mankin had never actually performed a fusion surgery he claimed to have performed and that the patient never needed surgery in the first place. Despite this disturbing report, ROC took no formal action.

In early 2011, ROC hired Dr. Neil Vining as a pediatric orthopedic surgeon. Almost immediately upon joining the practice group, Dr. Vining recognized that ROC employees generally understood Dr. Mankin to be a substandard physician. Dr. Mankin's substandard care was so severe that Dr. Vining even noticed ROC doctors referring pediatric cases to outside practice groups, like UNC or Duke, in an attempt to steer those patients away from Dr. Mankin. Dr. Vining quickly became worried about how Dr. Mankin treated his patients.

By the end of the year, Dr. Vining's mounting concerns hit a breaking point. He arranged a meeting with Mr. Stein, Dr. Andrew, and an insurance representative. At the meeting, Dr. Vining presented three pediatric cases in which Dr. Mankin provided negligent medical care. He conveyed his opinion to the group that Dr. Mankin presented a significant risk to his patients and urged that corrective measures be implemented. Yet, still no action was taken—Dr. Mankin remained employed by ROC.

In July 2012, Brittany returned to Dr. Mankin with continuing back pain. Upon evaluation, Dr. Mankin diagnosed Brittany with an unstable sacroiliac joint and recommended that Brittany undergo a second surgery. Approximately four months later, Dr. Mankin performed that second surgery, attempting a left sacroiliac fusion and stabilization fixation with three screws. Dr. Mankin wrote in his operative report that the screws were properly affixed. However, the operating room imaging showed that two of the three screws were, in fact, not fixed to bone at all.

Concerns over Dr. Mankin reached a turning point in early 2013. In January of that year, Dr. Edmund Campion, a pediatric orthopedist at UNC School of Medicine, sent an email to Dr. Jeffrey Kobs, an orthopedist at ROC. The email included a letter detailing widely held concerns regarding Dr. Mankin's "pattern of incompetent, and even dangerous, care" provided to his patients. In that email, Dr. Campion expressed his intent to share the letter with the chief medical officer at WakeMed.[1] By March, Dr. Mankin had resigned from ROC.

After Dr. Mankin's resignation, Dr. Vining learned that Dr. Mankin was still treating patients—now through his own solo practice in Raleigh, North Carolina. Dr. Vining, troubled by the "highly dubious" and "consistently substandard" techniques of Dr. Mankin, decided that it was time to alert authorities. Dr. Vining wrote a letter to the North Carolina Medical Board. In that letter, Dr. Vining

---

[1] ROC physicians, including Dr. Mankin, relied upon WakeMed for its surgical facilities to execute their surgeries.

encouraged the North Carolina Medical Board to independently contact various pediatric orthopedists who were familiar with Dr. Mankin's care and to entertain the possibility of sanctions against him.

The Board opened an investigation into the quality of Dr. Mankin's care. At the conclusion of the investigation, Dr. Mankin entered a non-disciplinary consent order. In that order, Dr. Mankin voluntarily agreed to place his medical license on inactive status and move out of North Carolina to pursue non-medical interests. By 12 December 2015, Dr. Mankin officially ceased all practice of medicine in the State of North Carolina.

In 2016, Brittany's back pain returned. She called ROC to schedule an appointment. This time, she was seen by Dr. Mark Mikles, another orthopedist at ROC. Dr. Mikles saw Brittany for two visits before referring her to Dr. Joseph Barker, a hip specialist at ROC.

Following her visit with Dr. Barker, Brittany determined it was time to seek a second opinion. She visited Dr. William Richardson, an orthopedist at Duke. During her visit with Dr. Richardson, Brittany discovered that she had never suffered from spinal stenosis, that Dr. Mankin's surgical fusion had never been performed, and that the screws used to stabilize her sacroiliac joint had never connected to bone. Brittany underwent a third surgery to remove the useless screws. She then commenced this action.

**B. Procedural Background**

On 21 November 2016, plaintiffs filed a Rule 9(j) extension motion expressing their intent to commence a medical malpractice action arising from the surgeries performed in 2010 and 2012 by Dr. Mankin. *See* N.C.G.S. § 1A-1, Rule 9(j) (2023). Through their subsequently filed complaint, plaintiffs sought to hold Dr. Mankin directly liable for medical malpractice. Plaintiffs also claimed the clinic was vicariously liable for Dr. Mankin's alleged malpractice and sued ROC directly for negligently retaining and supervising Dr. Mankin.[2] In addition, plaintiffs asserted various tort claims against Dr. Mankin, ROC, and ROC's employees.

All defendants moved to dismiss plaintiffs' claims that stemmed from Dr. Mankin's alleged malpractice, citing the four-year statute of repose. *See* N.C.G.S. § 1-15(c) (2023). The trial court dismissed plaintiffs' medical malpractice claims as well as other claims against ROC and its employees. However, the trial court allowed some claims to proceed, including the claims against ROC for negligent retention and negligent supervision.

On 14 February 2022, the remaining defendants moved for summary judgment, arguing that plaintiffs' remaining claims all stemmed from the malpractice claim and were therefore barred by the malpractice statute of repose. After a hearing

---

[2] Plaintiffs' complaint alleges claims against ROC and/or Raleigh Orthopaedic Research Foundation (Foundation). However, the Foundation dissolved in 2016 and plaintiffs did not include the Foundation in their notice of appeal. Accordingly, this Court focuses its analysis solely on ROC.

on the matter, the trial court agreed, granting summary judgment for defendants on all remaining claims. Plaintiffs appealed the summary judgment order.

At the Court of Appeals, plaintiffs did not appeal the dismissal of their medical malpractice claims, conceding that those claims were barred by the statute of repose. *Cottle v. Mankin*, 294 N.C. App. 20, 22 (2024). However, plaintiffs did appeal the disposal of several other tort claims by the summary judgment order, including claims of negligent retention and supervision, fraud, breach of fiduciary duty, and infliction of emotional distress against ROC and several of its employees. *Id.* at 22–23.

The Court of Appeals affirmed summary judgment for defendants on most of plaintiffs' claims. *Id.* at 26. The court, however, reversed the trial court's grant of summary judgment on the negligent retention claim against ROC.[3] *Id.* at 28. The Court of Appeals reasoned that the negligent retention claim falls outside of the statute of repose, because a corporate medical practice cannot satisfy the statutory definition of a "health care provider" in N.C.G.S. § 90-21.11(1), and because a negligent retention claim is not a "medical malpractice action" as defined by N.C.G.S. § 90-21.11(2). *Id.* at 27.

---

[3] The Court of Appeals only addressed plaintiffs' negligent retention claim, but not their negligent supervision claim. *Cottle*, 294 N.C. at 27 ("[W]e must conclude that Plaintiffs' claim against ROC for negligent retention is not barred by the statute of repose, as the claim is not one of malpractice under the relevant statute."). However, because the two claims are so factually intertwined, the court may have meant to revive the negligent supervision claim as well. Nevertheless, the analysis for both is the same. The lack of clarity on this point does not alter our outcome.

Defendants filed a petition for discretionary review, requesting this Court to review the Court of Appeals' conclusion that the statute of repose does not bar plaintiffs' negligent retention claim. Plaintiffs filed a conditional petition for discretionary review, requesting this Court to review the Court of Appeals' decision affirming dismissal of plaintiffs' fraud, breach of fiduciary duty, and infliction of emotional distress claims. We allowed both.

## II.    Standard of Review

This appeal arises from a trial court's order allowing summary judgment. "Summary judgment is appropriate when 'there is no genuine issue as to any material fact' and 'any party is entitled to a judgment as a matter of law.' " *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88 (2006) (quoting N.C.G.S. § 1A-1, Rule 56(c) (2005)). "[W]hen considering a summary judgment motion, 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' " *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337 (2009) (alteration in original) (quoting *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)).

This Court applies de novo review to a trial court's order allowing summary judgment. *Builders Mut. Ins. Co.*, 361 N.C. at 88. To the extent this appeal involves issues of statutory interpretation, de novo review governs those issues as well. *See Cherry Cmty. Org. v. Sellars*, 381 N.C. 239, 247 (2022).

## III.    Analysis

Two distinct sets of claims are presented on appeal. The first set includes the

negligent retention claim against ROC. The negligent retention claim pertains to ROC's retention of Dr. Mankin despite numerous complaints. The second set, appealed by plaintiffs, are plaintiffs' claims of fraud, constructive fraud, breach of fiduciary duty, and negligent and/or intentional infliction of emotional distress against ROC and various ROC physicians and employees. This second set arises from a failure to inform Brittany of Dr. Mankin's history of care. We address each set in turn.

## A. The Negligent Retention Claim

Plaintiffs allege ROC negligently retained Dr. Mankin as an employee of the clinic to perform pediatric surgeries. Defendants counter that plaintiffs' negligent retention claim qualifies as a medical malpractice action as defined by N.C.G.S. § 90-21.11(2)—and is therefore barred by the statute of repose.

North Carolina's statute of repose requires a malpractice action to be filed within four years of a defendant's last relevant act:

> Except where otherwise provided by statute, a cause of action for malpractice arising out of the performance of or failure to perform professional services shall be deemed to accrue at the time of the occurrence of the last act of the defendant giving rise to the cause of action . . . . [I]n no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action[.]

N.C.G.S. § 1-15(c) (2023).

Plaintiffs filed their original complaint in 2017, more than four years after Brittany's last surgery with Dr. Mankin in 2012. Plaintiffs do not deny that if the

statute of repose applies to their negligent retention claim, that claim is untimely. Rather, plaintiffs contend, and the Court of Appeals agreed, that the negligent retention claim is not a "medical malpractice action" to which the statute of repose can apply.

"Medical malpractice action" is defined by statute. *Id.* § 90-21.11(2). Subdivision 90-21.11(2) states:

> Medical malpractice action. — Either of the following:
>
> a. A civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care *by a health care provider*.
>
> b. A civil action against a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes for damages for personal injury or death, when the civil action (i) alleges a breach of administrative or corporate duties to the patient, including, but not limited to, allegations of negligent credentialing or negligent monitoring and supervision and (ii) arises from the same facts or circumstances as a claim under sub-subdivision a. of this subdivision.

*Id.* (emphasis added). For an action to satisfy the statutory definition of medical malpractice action under sub-subdivision (2)(a), the acts giving rise to the action must have been furnished "by a health care provider." *Id.*

Health care provider is conveniently defined by the same statute. *Id.* § 90-21.11(1). Subdivision 90-21.11(1) states:

-10-

Health care provider. — Without limitation, any of the following:

   a. A person who pursuant to the provisions of Chapter 90 of the General Statutes is licensed, or is otherwise registered or certified to engage in the practice of or otherwise performs duties associated with any of the following: medicine, surgery, dentistry, pharmacy, optometry, midwifery, osteopathy, podiatry, chiropractic, radiology, nursing, physiotherapy, pathology, anesthesiology, anesthesia, laboratory analysis, rendering assistance to a physician, dental hygiene, psychiatry, or psychology.

   b. A hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes.

   c. Any other person who is legally responsible for the negligence of a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes.

   d. Any other person acting at the direction or under the supervision of a person described by sub-subdivision a. of this subdivision, a hospital, a nursing home licensed under Chapter 131E of the General Statutes, or an adult care home licensed under Chapter 131D of the General Statutes.

   e. Any paramedic, as defined in [N.C.]G.S. 131E-155(15a).

*Id.*

### 1. *Raleigh Orthopaedic Clinic As a Statutory Health Care Provider*

We first examine whether ROC qualifies under § 90-21.11(1) as a statutory "health care provider." We hold that it does.

Defendants argue that ROC, a medical practice, fits squarely within the meaning of sub-subdivision (1)(c): "Any other person who is legally responsible for the negligence of a person described by sub-subdivision a. of this subdivision." *Id.* Meanwhile, plaintiffs counter that the word "person" does not include non-human entities. Plaintiffs explain that the only non-human entities recognized under the health care provider definition are those three explicitly listed: a hospital, a nursing home, and an adult care home. In plaintiffs' view, the listing of the three corporate bodies indicates the legislature's clear intent to only recognize those three entities under its definition of health care provider. We disagree.

Our General Assembly has provided rules for the construction of its statutes that must be observed "unless such construction would be inconsistent with the manifest intent of the General Assembly, or repugnant to the context of the same statute." N.C.G.S. § 12-3 (2023). One such rule is that "[t]he word 'person' shall extend and be applied to bodies politic and corporate, as well as to individuals, unless the context clearly shows to the contrary." *Id.* § 12-3(6). Thus, the word "person" contained in § 90-21.11(1)(c) must be read as including corporate bodies, unless the

context clearly shows to the contrary.[4]

As always, we begin with the text. Subdivision 90-21.11(1) explicitly directs courts to construe the definition of health care provider broadly. Indeed, the definition of health care provider is "[w]ithout limitation." N.C.G.S. § 90-21.11(1). Sub-subdivision (1)(c) reinforces an expansive reading of the statute as well. Sub-subdivision (1)(c) uses the word "any" before the term "other person," indicating that person includes entities other than the three listed. *Id.*

The Court of Appeals panel below seemingly embraced the negative-implication canon, *expressio unius*, in its reading of § 90-21.11. The negative-implication canon counsels, "[t]he expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012) [hereinafter Scalia & Garner, *Reading Law*]. Applying this canon, the Court of Appeals reasoned that "[t]he only non-human entities incorporated within the definition of 'health care provider' are 'a hospital, a duly licensed nursing home and a duly licensed adult care home.' " *Cottle*, 294 N.C. App. at 26 (extraneity omitted).

However, the negative-implication canon is not appropriate where the plain

---

[4] This statutory mandate tracks the traditional rule of statutory interpretation. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 273 (2012) ("Traditionally the word *person*—as well as *whoever*—denotes not only natural persons (human beings) but also artificial persons such as corporations, partnerships, associations, and both public and private organizations. Though surprising to nonlawyers, this legal meaning is age-old." (footnote omitted)).

text of the statute excludes its application. Subdivision 90-21.11(1)'s explicit "[w]ithout limitation" directive excludes application of the canon. *See* Scalia & Garner, *Reading Law* at 244 (noting that "adding words such as *without limitation* before each passage where [the] canon would otherwise apply" "has the same effect as" adding "[a] provision excluding application of the negative-implication canon"). Accordingly, the Court of Appeals' reliance on the three listed entities to define the term "person" was misplaced.

Sub-subdivision 90-21.11(1)(c)'s context further supports application of the statutory rule that the word "person" includes corporate bodies. According to sub-subdivision (1)(c), "[a]ny other person" refers to a person "who is *legally responsible* for the negligence of a person described by sub-subdivision a. of this subdivision." N.C.G.S. § 90-21.11(1)(c) (emphasis added). Sub-subdivision (1)(a) describes persons who are licensed to engage in various practices of medicine, such as physicians, dentists, and pharmacists. *Id.* § 90-21.11(1)(a). Medical practices are routinely vicariously liable, and thus "legally responsible," for the negligence of their physicians and other health care professionals. *See, e.g.*, *Shuffler v. Blue Ridge Radiology Assocs., P.A.*, 73 N.C. App. 232 (1985); *King v. Bryant*, 369 N.C. 451 (2017); *Sharpe v. Worland*, 351 N.C. 159 (1999). A corporate medical practice therefore plainly aligns with sub-subdivision (1)(c)'s description. Thus, the context of sub-subdivision (1)(c) supports, rather than contradicts, § 12-3(6)'s instruction that the word "person" shall extend to bodies corporate.

The relevant North Carolina Court of Appeals caselaw supports this conclusion as well.[5] In *Sharpe v. Worland*, 137 N.C. App. 82 (2000), a previous panel of the Court of Appeals interpreted the word "person" in the very same chapter as that at issue here, Chapter 90. And the *Sharpe* court employed the very same reasoning that guides our analysis here. *Id.* As the panel aptly explained, "the general rule of statutory construction holds that, absent a clear legislative intent to the contrary, 'person' should be defined pursuant to [N.C.]G.S. § 12-3(6) (1999), which provides that the term 'person' applies to 'bodies politic and corporate, as well as to individuals.' " *Id.* at 89. Following this general rule, the court held, "[D]efendant Hospital, a corporate body, qualifies as a 'person' under [N.C.]G.S. § 90-21.22(e)." *Id.*

Even more to the point, the Court of Appeals has also opined that the word "person" contained in § 90-21.11(1) extends to entities not explicitly listed. In *Estate of Baldwin v. RHA Health Services, Inc.*, the court held that the word "person" appearing in § 90-21.11(1)(d) extended to an entity that ran a residential facility for developmentally disabled persons. 246 N.C. App. 58, 64–65 (2016). Significantly, a residential facility for developmentally disabled persons is not one of the three listed entities contained in § 90-21.11(1).[6] Our reading aligns with a principle repeatedly

---

[5] Although these Court of Appeals cases are not controlling, this Court finds them to be persuasive.

[6] A residential facility for developmentally disabled persons is licensed under Chapter 122C of the North Carolina General Statutes. It, therefore, would not qualify as an adult care home licensed under Chapter 131D of the General Statutes, which § 90-21.11(1) explicitly lists.

honored by this Court; "words used in one place in a statute have the same meaning in every other place in the statute." *In re L.L.*, 386 N.C. 706, 713 (2024) (quoting *State v. Rogers*, 371 N.C. 397, 403 (2018)). Thus, as the *Baldwin* court concluded, the word "person" contained in § 90-21.11(1) extends to corporate bodies.

### 2. *Plaintiffs' Negligent Retention Claim As a Medical Malpractice Action*

Finally, plaintiffs' negligent retention claim against ROC satisfies the definition of a "medical malpractice action" under § 90-21.11(2). Sub-subdivision (2)(a) defines a medical malpractice action as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C.G.S. § 90-21.11(2)(a). Plaintiffs' negligent retention claim arises out of ROC's delivery of its own professional services. Here, ROC allegedly engaged in the negligent exercise of its clinical judgment and professional skill when the clinic continued to retain Dr. Mankin despite the numerous internal reports of his misconduct.[7] Thus, the claim arises out of the furnishing of professional services in the performance of medical care by ROC. *See Gause v. New Hanover Reg'l Med. Ctr.*, 251 N.C. App. 413, 418 (2016) ("Our courts have classified as medical malpractice those claims alleging injury resulting from activity that required clinical

---

[7] Plaintiffs' negligent supervision claim arises out of ROC's alleged negligent exercise of clinical judgment and professional skill when the clinic declined to remedy Dr. Mankin's substandard care to his patients. Thus, it too is a medical malpractice action under the statute.

judgment and intellectual skill.").

For these reasons, plaintiffs' negligent retention claim is a medical malpractice action under § 90-21.11. It is therefore barred by the statute of repose. *See* N.C.G.S. § 1-15(c).[8]

## B. The Fraud, Constructive Fraud, Breach of Fiduciary Duty, and Negligent and/or Intentional Infliction of Emotional Distress Claims

Having carefully considered the opinion of the Court of Appeals, the record and briefs, and the oral arguments before us, we conclude that plaintiffs' conditional petition for discretionary review was improvidently allowed by order on 21 March 2025.

## IV. Conclusion

The facts as alleged in this case are deeply troubling. However, our concerns must yield to what our statutes instruct. The General Assembly has chosen to bar malpractice actions four years after a defendant's last relevant act. Further, the General Assembly has defined a medical malpractice action as an action encompassing negligent retention claims against corporate entities. Accordingly, we are compelled to reverse the Court of Appeals' decision and conclude that the trial court properly granted summary judgment on the negligent retention claim against ROC.

---

[8] Defendants further request this Court to hold that a negligent retention claim is necessarily barred when the underlying tort claim—a medical malpractice action—is invalid. Having resolved this matter on statutory grounds, the Court need not address this additional issue.

As to the additional claims, we hold that plaintiffs' conditional petition for discretionary review was improvidently allowed.

REVERSED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.